746 A.2d 40 (2000)
Carolyn DAVIES and James D. Davies, her husband, Plaintiffs-Appellants,
v.
Joseph IMBESI, D.O.; David Sirota, D.O.; Multi-Care Health Center; and St. Barnabas Outpatient Center, Defendants-Respondents, and
Thomas Helbig, M.D., Defendant.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 2000.
Decided February 23, 2000.
*41 Edwin J. McCreedy, Cranford, for plaintiffs-appellants (McCreedy and Cox, attorneys; Mr. McCreedy, on the brief).
John M. Deitch, Westfield, for defendants-respondents (Garrubbo, Romankow & Rinaldo, attorneys; Mr. Deitch, on the brief).
Before Judges STERN, WEFING and STEINBERG.
The opinion of the court was delivered by WEFING, J.A.D.
Plaintiffs appeal from the trial court's order dismissing their complaint with prejudice for failure to file a timely affidavit of merit. N.J.S.A. 2A:53A-27. After a careful review of the record and consideration of the arguments advanced on appeal, we affirm.
Plaintiffs filed their complaint on February 11, 1998; they alleged negligence in the care and treatment rendered to Carolyn Davies by Dr. Joseph Imbesi, Dr. Joseph Sirota, Dr. Thomas Helbig, Multi-Care Health Center and St. Barnabas Out-Patient Center. Ms. Davies was experiencing pain in her lower right leg and, on December 4, 1995, was examined by Dr. Imbesi at Multi-Care. He noted swelling in the area of her ankle and foot, and diagnosed a "muscle pull of calf." He told her to take Aleve for her pain. He included a notation in his records that no x-ray was required.
Ms. Davies' pain persisted and she returned to Multi-Care on February 18, 1996 and was examined by Dr. Sirota. He ordered that two x-rays be taken and they were sent to Cranford Diagnostic Imaging (Cranford Diagnostic) for interpretation. Dr. Bernard J. Beute of Cranford Diagnostic prepared a report dated that same day in which he noted the presence of a four centimeter lytic lesion on the right tibia. According to Dr. Beute,
Differential diagnostic considerations should include both neoplastic and infectious processes. A localized focus of osteomyelitis could appear this way. Bone neoplasms, such as osteosarcoma, Ewing sarcoma, or adamantinoma, could have this plain film appearance. Often, the narrowing of the differential diagnoses in these cases requires a multimodality approach. Typically, bone scan, MRI, and thin-section CT scan of the affected area is performed.
*42 Orthopedic consultation is recommended.
Ten days later, Ms. Davies had an orthopedic consultation with Dr. Helbig at Multi-Care. Dr. Helbig made the following note:
There is indeed a lytic process in the right tibia that could be consistent with neoplasia or an infectious process. Therefore, proceed with the MRI scan quickly. If it is positive, appropriate referral may be necessary.
Ms. Davies had an MRI performed on March 5, 1996 at Cranford Diagnostic. Dr. Beute reported that same day to Dr. Helbig that the films:
suggest some form of surface osteosarcoma.... Its fairly well circumscribed soft tissue component suggests that it has been present for some time and it may actually represent a less aggressive neoplasm than an osteosarcoma.... Clearly, a biopsy is indicated for tissue diagnostic purposes.
A biopsy was performed at University Hospital on March 8, 1996 which revealed "malignant neoplasms, consistent with Ewing's sarcoma." On March 27, 1996, Ms. Davies' right leg was amputated below the knee.
Within their complaint filed on February 11, 1998, plaintiffs alleged that Dr. Imbesi was negligent in failing to order x-rays or schedule a follow-up visit; that Dr. Sirota was negligent in delaying ten days in scheduling an orthopedic consultation; and that Dr. Helbig was negligent in not scheduling the MRI earlier than two weeks after his examination.
The Legislature passed the affidavit of merit statute in order to identify "meritless lawsuits ... at an early stage of the litigation." In re Petition of Hall, 147 N.J. 379, 391, 688 A.2d 81 (1997). Under N.J.S.A. 2A:53A-27, plaintiffs were required to serve an affidavit of merit within sixty days of defendants' answers. Dr. Sirota's answer was filed on March 30, 1998, Dr. Imbesi's on May 7, 1998.[1] Plaintiffs' affidavit of merit was thus due no later than July 6, 1998. (The statute does not explicitly provide whether the sixty days runs from the filing of the last answer; we do not address the issue but simply give plaintiff the benefit of selecting the latest possible date by which the affidavit would be due.) Under that same statute, plaintiffs were entitled to an additional sixty days to serve the affidavit if they were able to establish good cause for granting such an extension.
Further, the Legislature recognized that in certain instances a plaintiff might be unable to supply an affidavit of merit because a recalcitrant defendant had failed to supply required records. In such an instance, if a defendant fails to respond within forty-five days to a written request that is served either personally or by certified mail, for medical records or other information "having a substantial bearing on preparation of the affidavit," and the plaintiff provides a sworn statement to that effect, no affidavit of merit is required. N.J.S.A. 2A:53A-28.
N.J.S.A. 2A:53A-28 does not address whether, in such an instance, a plaintiff is entirely relieved of the obligation to file an affidavit of merit or whether the defendant's lack of cooperation acts to toll the running of the statutory time frame within which the affidavit of merit would otherwise be required. It is not necessary to resolve that question on this appeal.
The failure to supply either an affidavit of merit or a sworn statement in accordance with N.J.S.A. 2A:53A-28 is "deemed a failure to state a cause of action." N.J.S.A. 2A:53A-29. Ordinarily, a dismissal for such failure is to be a dismissal with prejudice, unless plaintiff can demonstrate the existence of extraordinary circumstances. Alan J. Cornblatt, PA v. *43 Barow, 153 N.J. 218, 242, 708 A.2d 401 (1998).
It is undisputed that plaintiffs did not file either a timely affidavit of merit or a sworn statement in lieu thereof. Accordingly, defendants moved on October 30, 1998 to dismiss the complaint. On November 5, 1998, plaintiffs served an affidavit of merit as to Dr. Imbesi and Multi-Care. The trial court nonetheless granted the defendants' motion on November 20, 1998 and denied plaintiffs' motion for reconsideration on January 8, 1999. This appeal resulted.
Plaintiffs argue on appeal that they demonstrated exceptional circumstances, such that their complaint should not have been dismissed with prejudice. They also contend that, in light of the fact that they have obtained and served an affidavit of merit, dismissal of their complaint contravenes the purpose of the statute.
Plaintiffs' allegation of exceptional circumstances revolves around the difficulty plaintiffs' counsel experienced in obtaining copies of the x-ray films that were taken on February 18, 1996. On February 25, 1998, two weeks after filing the complaint, plaintiffs' counsel wrote to University Hospital, Multi-Care and Cranford Diagnostic; he requested copies of all of Ms. Davies' medical records from the first two institutions and copies of all films and reports from Cranford Diagnostic. He enclosed executed releases and assured prompt payment of any fees for duplication. By April 22, 1998, he had received copies of Ms. Davies medical records, including a copy of Dr. Beute's report of the x-rays taken on February 18, 1996. Copies of the x-ray films, however, were not included in the records he received.
From April 1998 through October 1998, he engaged in correspondence with Cranford Diagnostic to obtain copies of those films. On October 23, 1998, he personally visited Cranford Diagnostic and learned for the first time that it had not retained the films after Dr. Beute interpreted them but had, rather, returned them to Multi-Care. On October 26, 1998, he wrote to the attorney for Multi-Care, requesting his assistance in obtaining copies of the x-ray films. The motion to dismiss was filed on October 30, 1998.
We are unable to conclude that this chronology demonstrates "exceptional circumstances." If we were to do so, we would entirely vitiate the significance of N.J.S.A. 2A:53A-28 which sets forth the avenue of relief available to a plaintiff who encounters a delay in obtaining copies of records. That the legislature included such a provision is a clear indication that delays in obtaining records should not be construed to constitute "exceptional circumstances."
A further indication that the Legislature did not intend a delay in obtaining medical records to constitute "exceptional circumstances" can be seen in that portion of N.J.S.A. 2A:53A-27 which permits a sixty-day extension for filing an affidavit of merit. There was no timely request for an extension in this matter. Burns v. Belafsky, 326 N.J.Super. 462, 741 A.2d 649 (App.Div.1999) (request for an extension deemed timely if filed within 120 days of defendant's answer being filed even if beyond 60 days); Palanque v. Lambert-Woolley, 327 N.J.Super. 158, 742 A.2d 1002 (App.Div.2000).
Nor are we able to conclude that defense counsel, who filed the motion to dismiss within five days of the request of plaintiffs' counsel for assistance in obtaining the x-ray films, was using this statute as a sword rather than a shield. Barreiro v. Morais, 318 N.J.Super. 461, 470, 723 A.2d 1244 (App.Div.1999). That request came after the deadline for filing the affidavit had already passed.
A portion of plaintiffs' argument appears to contend that they were unable to produce an affidavit of merit without the x-ray films because it was the films that would allow them to address the issue of proximate cause. The affidavit of merit statute *44 does not require, however, that the affidavit address the issue of proximate cause; it speaks only of an affidavit
that the care, skill or knowledge exercised... in the treatment ... fell outside acceptable professional ... standards or treatment practices.

[N.J.S.A. 2A:53A-27.]
We can hardly close our eyes, moreover, to the fact that once the motion to dismiss was filed, plaintiffs were able to produce an affidavit of merit on the basis of the x-ray report alone, without production of the films.
Finally, we are unable to agree that, because plaintiffs have since obtained an affidavit of merit, dismissal of plaintiffs' complaint is contrary to the purposes of the statute. We cannot ignore the specific statutory deadlines created by the Legislature. Adopting plaintiffs' argument would require us to turn a blind eye to the limited time frames the Legislature saw fit to adopt. When the statutory language is clear, there is no room for interpretation.
In any case involving application of a statute, we must construe the plain meaning of the statute and apply it to the facts. The meaning of a statute first must be sought in the language in which it is framed and, if it is plain, our sole function is to enforce it according to its terms. When a statute is clear and unambiguous on its face, it is not open to construction or interpretation. We may not disregard plain statutory language to replace it with an unenacted legislative intent, because such action would constitute the undemocratic process of judicial lawmaking.
[Dempsey v. Mastropasqua, 242 N.J.Super. 234, 238, 576 A.2d 335 (App.Div.1990).]
The order under review is affirmed.
NOTES
[1] The first answer was filed on behalf of Dr. Sirota and St. Barnabas Outpatient Center, the second on behalf of Dr. Imbesi and Multi-Care Health Center.