787 A.2d 222 (2001)
346 N.J. Super. 141
Margaret HEFFERON, Administratrix of the Estate of Susan Hefferon and Margaret Hefferon, Individually, Plaintiff-Appellant,
v.
Dr. Steven GITLER, and Dr. Lewis Carp, Individually and Jointly, Practicing as Delsea Family Medical Group, Defendants-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted December 5, 2001.
Decided December 21, 2001.
Dash and Dash, Cherry Hill, attorneys for appellant (B. Alan Dash, on the brief).
Beth A. Wright, New Brunswick, attorney for respondent (Ms. Wright, of counsel; Mary Elizabeth Gazi, on the brief).
Before Judges BAIME, FALL and AXELRAD.
The opinion of the court was delivered by AXELRAD, J.T.C. (temporarily assigned).
In this medical malpractice action, plaintiff, Margaret Hefferon, Administratrix of the Estate of Susan Hefferon, appeals from the entry of an order dismissing her complaint for failure to comply with the affidavit of merit statute, N.J.S.A. 2A:53A-27.
On May 26, 1998, plaintiff filed a medical malpractice complaint against defendants, Dr. Steven Gitler, Dr. Lewis Carp, and Delsea Family Medical Group, arising out of the death of her daughter on May 29, 1996. Plaintiff alleges that defendants were negligent in the medical care and treatment they rendered to Susan Hefferon the day before her death.
Susan Hefferon was under the medical care of Doctors Gitler and Carp when she presented herself to their office at the Delsea Family Medical Center on May 28, 1996 with symptoms of vomiting, diarrhea, dehydration, fever and a ten-pound weight loss within a three-day period. Dr. Gitler prescribed Compazine and Lomotil for her *223 complaints and sent her home for bed rest. When a family friend contacted the doctor that evening and advised that Susan Hefferon's temperature had risen to 104°, he referred her to the emergency room. Ms. Hefferon was admitted to the Elmer Hospital emergency room on May 29, 1996 at 1:17 a.m. in acute renal failure with thrombocytopenia. The pulmonologist's impression was that she was in acute hypoxic respiratory failure and had developed acute anion gap and the hematologist's impression was sepsis of unknown source. Ms. Hefferon went into ventricular tachycardia by noon and into cardiac arrest and was pronounced dead at 2:03 p.m. Plaintiff contended that her daughter's death could have been avoided by defendants conducting a proper physical examination, ordering proper laboratory studies and proper treatment.
Defendant filed an answer on July 13, 1998. On November 11, 1998, plaintiff sent the May 21, 1998 report of Mark G. Graham, M.D., FACP, Clinical Associate Professor of Medicine, Jefferson Medical College, to defendants' counsel with answers to interrogatories. In his report the expert opines that
the standard of care of a patient with this presentation on 5/28/96 was hospitalization to effect the above [immediate replacement of lost fluids parenterally, correction of certainly altered electrolytes, constant monitor of intake and output of all fluids, antibiotic care of septicemia if found to be present, which it very well may have been]. This was not done. To the contrary, not only was she deprived of this appropriate and likely life saving action, a specifically contraindicated empiric therapy in the form of Lomotil was given, trapping any infectious agent and its toxins within the patient.
....
Within a reasonable degree of medical certainty, these steps taken on 5/28/96 would have ameliorated her compromised condition, avoiding the development of hypovolemic shock, ARDS, DIC [agonal disseminated intravascular coagulation], HUS [hemolytic-uremia syndrome] and death. In that case, she would have recovered unscathed and lived a normal actuarial life. Dr. [Gitler's] care on this date was negligent.
On December 4, 1998, the complaint was dismissed for plaintiff's failure to answer interrogatories. On March 12, 1999, plaintiff's counsel filed an affidavit of merit by Dr. Graham, dated November 18, 1998, that stated, upon his review of the medical records pertaining to Susan Hefferon, that "[i]t is my professional opinion there is a reasonable probability that the care exercised and exhibited in the treatment which is the subject of the complaint fell outside acceptable treatment practices."
Defendants then filed a series of motions in April and May 1999 to dismiss plaintiff's individual claims and punitive damage claims; to dismiss the complaint for failure to timely file the affidavit of merit; and for partial summary judgment dismissing plaintiff's wrongful death claims, individual claims, and punitive damage claims. On or about May 12, 1999, plaintiff filed a motion to reinstate the complaint on the basis that interrogatory answers and documentation and supplemental responses and documentation were provided to defense counsel on November 10, 1998 and March 16, 1999, respectively.
In opposition to the motion to dismiss based on the affidavit of merit statute, plaintiff's counsel admitted that the affidavit of merit was not filed within sixty days following defendants' answer to the complaint and there was no application made for an additional sixty-day extension pursuant to N.J.S.A. 2A:53A-27. He contended, *224 however, that service of Dr. Graham's expert report with plaintiff's interrogatory answers on November 11, 1998, constituted "substantial compliance" with the affidavit of merit statute. According to counsel, the expert report, which was obtained by plaintiff prior to filing her complaint and contained information far in excess of that required in an affidavit of merit, was served within a sixty-day extension if one had been granted. Additionally, the parties engaged in discovery prior to and after Dr. Graham's report was supplied, beyond the statutorily allotted time frame for delivery of the affidavit, and thus defendant waived his right to invoke the statute. According to plaintiff's counsel, he filed the affidavit of merit on March 12, 1999 "only for the purpose of form since the substantive aspects had long since been a fact."
On June 11, 1999, the Law Division judge entered an order denying defendants' motion to dismiss plaintiff's complaint for failure to comply with the affidavit of merit statute. In a comprehensive written opinion, the judge held that:
it is proper for a court to apply equitable principles to determine whether extraordinary circumstances exist and/or to find that substantial compliance with the affidavit of merit statute has been demonstrated. On the facts of this case, applying equitable principles in determining that extraordinary circumstances existed for the late filing of the affidavit of merit and that substantial compliance with the time requirements of the affidavit of merit statute have been demonstrated,... [plaintiff's] March 12, 1999 service of Dr. Mark Graham's affidavit of merit will be deemed filed nunc pro tunc.

....
Under the doctrine of substantial compliance five factors must be present. Bernstein v. Board of Trustees of Teacher's[Teachers'] Pension & Annuity Fund, 151 N.J.Super. 71, 76-77[, 376 A.2d 563] (App.Div.1977). The party in technical default must fist show that there has been no prejudice to the defendant. Here the defendant has failed to even assert that he suffered prejudice as a result of the late filing. Demonstrating the lack of prejudice is the fact that discovery proceeded in due course irrespective of the late filing. In fact the September 23, 1998 CEP Case Management Order scheduled all pending discovery without mention of the filing of an affidavit of merit.
Secondly, the plaintiff must present evidence of a series of steps taken to comply with the statute. [Plaintiff] ... did attempt to comply with the statute by hiring an expert even before the case was filed. [Plaintiff] ... obtained Dr. Graham's expert report on May 21, 1998 and did not file her complaint until May 26, 1998. On November 11, 1998 the plaintiff provided the defendant, Dr. Gitler, with notice of the merit of her claim by turning over to him a copy of Dr. Graham's expert report. Furthermore, Dr. Graham actually executed an affidavit of merit on November 18, 1998.
Thirdly, a showing of general compliance with the purpose of the statute has been demonstrated. As the Cornblatt Court explained, "the overall purpose of the affidavit of merit bill is to require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious, in order that meritless lawsuits readily could be identified at an early stage of litigation." Cornblatt v. Barow, [153 N.J. 218, 242, 708 A.2d 401 (1998).] [Plaintiff] ... investigated the merits of her claim before she even instituted suit. By obtaining Dr. Graham's thorough opinion regarding Dr. Gitler's breach of the medical standard *225 of care ... [plaintiff] satisfied the purpose of the affidavit of merit statute. In fact, the defendant has never argued that ... [plaintiff's] claims lack merit.
Fourthly, the defendant must be given reasonable notice of the plaintiff's claim. Dr. Gitler was given notice of ... [plaintiff's] claims on May 26, 1998 when the complaint alleging medical malpractice against him was filed. On November 11, 1998, Dr. Gitler was given notice of the merit of the plaintiff's claims by his receipt of Dr. Graham's expert report.
Lastly, ... [plaintiff] has presented a reasonable explanation as to why she did not strictly comply with the statute. Based on Dr. Gitler's acknowledgment of receipt Dr. Graham's expert report and based on the continuance of discovery without reference being made to the affidavit of merit statute ... [plaintiff] reasonably believed that the defendant doctor was not requiring strict compliance with the statute.
As a result, this court is satisfied that... [plaintiff] substantially complied with the affidavit of merit statute. Based on the common sense application of the affidavit of merit statute in both [Hyman Zamft & Manard, L.L.C. v.] Cornell [309 N.J.Super. 586, 707 A.2d 1068 (App.Div.1998) ] and Cornblatt this court finds that the statute should not be strictly applied in this case. To do so would eviscerate the plaintiff's claim on a formal technicality rather than because no merit has been established. [Plaintiff's] ... presentation of extraordinary circumstances and her demonstration of substantial compliance support this court's equitable holding.
On September 8, 1999, a consent order was executed, dismissing all individual claims asserted by Margaret Hefferon; dismissing all claims under the Wrongful Death Act for financial dependency or future wage loss; and dismissing all claims asserted by the siblings of decedent, Susan Hefferon.
On March 17, 2000, defendants filed a motion seeking reconsideration of the order entered by the court on June 11, 1999, denying their motion to dismiss for failure to comply with the affidavit of merit statute, based on our holdings in Ricra v. Barbera, 328 N.J.Super. 424, 746 A.2d 68 (App.Div.2000) and Palanque v. Lambert-Woolley, 327 N.J.Super. 158, 742 A.2d 1002 (App.Div.2000),[1] decided in the interim.
Defendants' motion was argued and granted in an order entered on April 28, 2000, which dismissed plaintiff's complaint with prejudice. On reconsideration, the court "reluctantly" found that plaintiff did not substantially comply with the requirements of N.J.S.A. 2A:53A-27, "based on Ricra, Palanque, and Davies [v. Imbesi, 328 N.J.Super. 372, 746 A.2d 40, (App.Div. 2000) ]."
Plaintiff filed a timely notice of appeal, asserting that she met the five prongs of substantial compliance and fully complied with the legislative intent of the affidavit of merit statute. She also made the procedural argument that defendant was time-barred from filing a motion to reconsider.[2] *226 N.J.S.A. 2A:53A-27 requires the plaintiff to provide each defendant with an affidavit of merit "within 60 days following the date of filing of the answer to the complaint by the defendant...." Additionally, "[t]he court may grant no more than one additional period, not to exceed 60 days, to file the affidavit, ... upon a finding of good cause."
In Ricra, supra, relied upon by the Law Division judge in granting defendants' motion for reconsideration, we concluded that "plaintiff's submission of an unsworn and uncertified expert's report within sixty days of defendant's answer" did not satisfy the requirements of the affidavit of merit statute. 328 N.J.Super. at 426, 746 A.2d 68.
In Mayfield v. Community Medical Associates, 335 N.J.Super. 198, 210-11, 762 A.2d 237 (2000), we distinguished Ricra under circumstances where the plaintiff filed an affidavit of merit in a timely fashion but failed to serve it on the defendants and plaintiff timely served an unsworn expert report on defendants. We found those circumstances to constitute substantial compliance with the statute. Id. at 210, 762 A.2d 237.
However, in Kritzberg v. Tarsny, 338 N.J.Super. 254, 260, 768 A.2d 810 (App. Div.2001), we held that plaintiff failed to comply with the statute where the affidavit of merit was not served within the 120 day statutory period, even though certified interrogatory answers which described the expert's opinion, but did not attach a report, were served within the 120-day period.
Kritzberg was decided after, and recognized, the Supreme Court's decision in Burns v. Belafsky, 166 N.J. 466, 766 A.2d 1095 (2001), where the Court held that a plaintiff complies with the affidavit of merit statute if the plaintiff files a motion to extend the time, establishing good cause for the late filing, and also files an affidavit of merit within the overall 120 day period provided in N.J.S.A. 2A:53A-27. Burns, supra, 166 N.J. at 475-77, 766 A.2d 1095.
In Galik v. Clara Maass Medical Center, 167 N.J. 341, 355-56, 771 A.2d 1141 (2001), the Court addressed the inconsistent approaches in Ricra and Mayfield, as follows:

Cornblatt has been widely misunderstood as a rather narrow authorization of substantial compliance in the affidavit of merit setting. As a result, the Appellate Division is split over its meaning in the context of an unsworn expert's report.... In Ricra, the court held that Cornblatt's invocation of the doctrine of substantial compliance was narrowly limited to cases in which a plaintiff seeks to satisfy the statute with a certification.... Thus, Ricra denied a plaintiff the right to base a substantial compliance claim on an unsworn expert's report.... Mayfield, supra, reached a different conclusion, interpreting Cornblatt as addressing that particular complex of facts but allowing the invocation of substantial compliance in any case in which the elements of the doctrine are satisfied without regard to the nature of the underlying report....
Mayfield correctly interpreted Cornblatt. We did not intend in that case to restrict the power of our courts to apply the doctrine of substantial compliance when appropriate. What Ricra conceived as a limit imposed by Cornblatt is nothing more than a restatement of the template for a substantial compliance case. In Cornblatt, Justice Handler, writing for the Court, did exactly what precedent required. He declared that *227 the Legislature did not intend to prohibit use of substantial compliance in the affidavit of merit setting and he then tested the facts of Cornblatt against the five elements of the doctrine. The Court's analysis was neither restrictive nor expansive. By declaring that there was no legislative intent to the contrary, Cornblatt authorized the application of the substantial compliance doctrine in any affidavit of merit case in which its use is justified by the facts.
To be sure, in Cornblatt we discussed the way in which the affidavit/certification quandary could be resolved by resort to the elements of substantial compliance, but there is no reason to conclude that the doctrine should be limited to that factual scenario. In the absence of a contrary legislative intent, Mayfield properly determined that the doctrine of substantial compliance is applicable so long as the facts of the case satisfy the elements of the doctrine. Indeed, the very notion of substantial compliance requires a fact-sensitive analysis involving the assessment of all of the idiosyncratic details of a case to determine whether "reasonable effectuation of the statute's purpose" has occurred. Cornblatt, supra, 153 N.J. at 240, 708 A.2d 401....
In his initial ruling on June 11, 1999, Judge Holston articulated with wisdom and foresight an analysis of the equitable principles of "substantial compliance" and "extraordinary circumstances" consistent with what has become the trend of our Supreme Court so as to avoid a technical rejection of legitimate malpractice claims. See, e.g., Palanque, supra, 168 N.J. at 405, 774 A.2d 501; Fink v. Thompson, 167 N.J. 551, 561, 772 A.2d 386 (2001); Galik, supra, 167 N.J. at 352, 771 A.2d 1141. We cannot fault Judge Holston for reconsidering and changing his decision based upon our case law, published after his initial decision, which strictly interpreted the affidavit of merit statute.
We reverse Judge Holston's reconsideration order of April 28, 2000 and cite with approval to his original substantial compliance analysis contained in the comprehensive written opinion of June 11, 1999. Specifically, there was no showing of prejudice to defendants. Plaintiff took a series of steps to comply with the statute and generally met its purpose by retaining an expert prior to filing the complaint and attaching the expert's report to the interrogatory answers that were served within the 120-day statutory period, followed shortly thereafter with the filing and service of the affidavit of merit. Defendants had timely notice of the claim and plaintiff's theory of malpractice and apparently recognized the validity of her claim because they continued with discovery as if there was no violation of the statute. Additionally, the explanation by plaintiff's counsel as to why there was not strict compliance with the affidavit of merit statute is reasonable under the circumstances of this case.
Our decision is not intended to be a license to plaintiffs or their counsel in malpractice cases to ignore the substantive and procedural requirements of the affidavit of merit statute in the hope that a higher court will find substantial compliance and allow them their day in court. We admonish the plaintiffs' bar not to be lulled into a false sense of security based on the trend of the Supreme Court to allow an expansive interpretation of substantial compliance. As Justice Long cautioned in Galik, supra, 167 N.J. at 353, 771 A.2d 1141, "[t]o be sure, not every non-complying act is salvageable under the substantial compliance doctrine." Plaintiffs or their counsel who do not file an affidavit of merit "within 60 days following *228 the date of filing of the answer to the complaint by the defendant" or request "an additional period, not to exceed 60 days, to file the affidavit," proceed at its own peril.
Reversed, as to the reconsideration order of April 28, 2000. Plaintiff's March 12, 1999 filing is accepted nunc pro tunc as substantially complying with the affidavit of merit statute and its complaint is reinstated.
NOTES
[1] In Palanque we held that plaintiff's case did not meet either the extraordinary circumstances or substantial compliance standard or the common knowledge exception, if one exists, to the affidavit of merit statute. Although the Supreme Court agreed with our decision that plaintiff's claims of extraordinary circumstances and substantial compliance should be denied, it reversed and held that an affidavit of merit is not required in a common knowledge medical malpractice case. 168 N.J. 398, 403, 774 A.2d 501 (2001).
[2] According to Dr. Gitler's brief on appeal, the other defendants named in the complaint were dismissed and Dr. Gitler remains as the sole defendant in this appeal.