816 A.2d 1059 (2003)
358 N.J. Super. 13
Enez BALTHAZAR, Plaintiff-Appellant,
v.
ATLANTIC CITY MEDICAL CENTER, Barbara Henderson, M.D., Drs. DeStefano, Feldman, Kaufman & Korzeniowski, P.A., Joseph DeStefano, M.D., Allan Feldman, M.D., Larry Kaufman, M.D., Phillip Korzeniowski, M.D., Richard Cooper, M.D., University of Medicine and Dentistry of New Jersey School of Osteopathic Medicine, Defendants-Respondents,
and
Atlantic City Medical Center Community Health Services, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued January 27, 2003.
Decided March 5, 2003.
*1060 Anne Pope Cataline argued the cause for appellant (Frank D. Branella, attorney; Ms. Cataline on the brief).
Peter M. Sarkos, Atlantic City, argued the cause for respondent Atlantic City Medical Center (Fox, Rothschild, O'Brien & Frankel attorneys; Mr. Sarkos, of counsel and on the brief).
Thomas F. Marshall argued the cause for respondents Richard Cooper, D.O. and University of Medicine and Dentistry of New Jersey School of Osteopathic Medicine.
Sharon K. Galpern, Mount Laurel, argued the cause for respondents Barbara Henderson, M.D., Drs. DeStefano, Feldman, Kaufman & Korzeniowski, P.A., Joseph DeStefano, M.D., Allan Feldman, M.D., Larry Kaufman, M.D., Phillip Korzeniowski, M.D. (Stahl & DeLaurentis attorneys; Ms. Galpern and John A. Talvacchia on the brief).
Before Judges HAVEY, A.A. RODRíguez, and PAYNE.
The opinion of the court was delivered by PAYNE, J.A.D.
Plaintiff Enez Balthazar appeals from an order of May 23, 2000 dismissing with prejudice her claims for medical malpractice against defendants Barbara Henderson, M.D., Joseph DeStefano, M.D., Allan Feldman, M.D., Larry Kaufman, M.D., and Phillip Korzeniowski, M.D. (the Henderson defendants) as the result of plaintiff's failure to comply with the requirements of the affidavit of merit statute, N.J.S.A. 2A:53A-26 through -29. Balthazar also appeals from an order of May 14, 2001 denying her motion to amend *1061 her complaint to allege claims of battery and fraudulent concealment.[1] We affirm.
On January 27, 1998, Plaintiff underwent an abdominal hysterectomy at Atlantic City Medical Center (ACMC), performed by Henderson, an employee of the medical group of DeStefano, Feldman, Kaufman & Korzeniowski, P.A., with the assistance of Korzeniowski. A resident named Richard Cooper was also present in the operating room. During the surgery, sutures were mistakenly placed in Balthazar's left ureter that blocked the flow of urine, and the ureter may have been cut.[2] These acts caused complications that resulted in a second laparotomy on January 31, 1998, at which time the damage to the ureter was discovered, the ureter was rejoined to the bladder at a new location, and a stent was placed in it for a period of six weeks, at which time it was surgically removed. Additional complications arose of relevance to damages issues, but not to this appeal.
On June 21, 1999, plaintiff filed suit against the Henderson defendants, ACMC and others alleging injury to her ureter as the result of defendants' negligence. The Henderson defendants answered the complaint on October 5, 1999, and ACMC answered within two additional days. Demands for service of an affidavit of merit within sixty days were made in the answers of ACMC and the Henderson defendants. However, plaintiff did not file her affidavit until March 8, 2000a date more than 120 days after the answers of the relevant parties had been filed and after the Henderson defendants and ACMC had moved[3] for dismissal of Balthazar's suit with prejudice as the result of her failure to comply with the affidavit of merit act.[4]
*1062 That act, enacted as a tort reform measure in 1995, requires that plaintiffs seeking damages as the result of professional negligence make a threshold showing that their claims are valid, thereby permitting identification and dismissal of meritless lawsuits at an early stage of litigation before large sums are spent on defense. In re Petition of Hall, 147 N.J. 379, 391, 688 A.2d 81 (1997). See also, e.g., Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 771 A.2d 1141 (2001); Fink v. Thompson, 167 N.J. 551, 559, 772 A.2d 386 (2001); Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 242, 708 A.2d 401 (1998).
N.J.S.A. 2A:53A-27, a key section of the statute, provides in relevant part:
In any action for damages for personal injuries ... resulting from an alleged act of malpractice ... by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional... standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.
An escape from the statute's requirements is offered in N.J.S.A. 2A:53A-28, which provides:
An affidavit shall not be required pursuant to section 2 of this act [N.J.S.A. 2A:53A-27] if the plaintiff provides a sworn statement in lieu of the affidavit setting forth that: the defendant has failed to provide plaintiff with medical records or other records or information having a substantial bearing on preparation of the affidavit; a written request therefor along with, if necessary, a signed authorization by the plaintiff for release of the medical records ... has been made by certified mail or personal service; and at least 45 days have elapsed since the defendant received the request.
That section of the act reflects a legislative recognition that a plaintiff may be prevented from making a threshold showing of merit if defendant fails to produce essential medical records. Scaffidi v. Horvitz, 343 N.J.Super. 552, 558, 779 A.2d 439 (App.Div.2001). In this regard, we have observed that the purpose of the affidavit of merit act is not to provide a sword to defendants that can be used by them to fight off malpractice actions by procrastinating in providing necessary records or information. Barreiro v. Morais, 318 N.J.Super. 461, 470, 723 A.2d 1244 (App. Div.1999).
Nonetheless, to realize its tort reform goal, the act provides a stiff penalty upon noncompliance with the act's affidavit of merit or, alternatively, its escape provisions. Failure to timely provide an affidavit pursuant to N.J.S.A. 2A:53A-27, or furnish a statement conforming to N.J.S.A. 2A:53A-28 "shall be deemed a failure to state a cause of action." N.J.S.A. 2A:53A-29. In this case, Balthazar's failure to submit an affidavit of merit within the statutory time limit of 120 days[5] or to *1063 comply with the escape provisions of N.J.S.A. 2A:53A-28 led to dismissal of her complaint with prejudice.
On appeal, Balthazar argues that her complaint should have been preserved because of the allegedly fraudulent maintenance of relevant records, her substantial compliance with statutory directives, and the existence of extraordinary circumstances. Balthazar also argues the unconstitutionality of the affidavit of merit statute,[6] and claims error in the court's denial of her motion to amend her complaint. We will address these arguments in turn.

I.
The record discloses the existence of two operative reports by Dr. Henderson. According to Henderson, the first was dictated over the telephone upon completion of the surgery on January 27, 1998. When she did not find the report in the chart two days later, on January 29 she re-dictated a report that was transcribed and labeled "REDICTATION." Eventually, the first report was placed in the ACMC hospital chart. Additionally, the chart contained two copies of the redictation: an unsigned report, and a signed copy that was identical except for the handwritten insertion of the word "dissected" in a blank left by the transcriber for an inaudible term[7] and the handwritten addition of the words "broad ligament" next to the term medial ligament in a sentence that read as follows: "The retroperitoneal space was entered posteriorly on the left side and the ureter was identified along the medial ligament [handwritten: broad ligament] of the peritoneum." Neither report contained any acknowledgment of the suturing and alleged transection of the left ureter that formed the basis for Balthazar's claim of malpractice. Indeed, Henderson testified in her deposition that she was unaware that the damage had occurred.
Information that is key to the malpractice claim, because it demonstrates the existence of damage occurring during the initial surgery, appears in the urological studies and report of repairative surgery performed by urologist Barry S. Kimmel that also were placed in the ACMC hospital chart. Although it is unclear when the hospital chart was furnished to Balthazar, no claim has been made that its production was untimely.
Nonetheless, Balthazar argues in her brief, and counsel argued orally that:
The pivotal issue is whether the appellant must rely on the fraudulent medical record that has been provided by the respondents. Throughout this entire litigation, the court has based its holdings on the record presented by the respondents, however appellant can prove the record is fraudulent and unreliable. It is not possible to present an Affidavit of Merit based on a fraudulent record. It violated both the Court rules and statutes.
* * *
Even though appellant did provide an Affidavit of Merit dated March 8, 2001, it is of no consequence. No valid Affidavit can be prepared because there is no *1064 valid medical record to serve as the basis for the Affidavit. It is impossible to provide an Affidavit when no authentic medical record exists.
We do not find patent the "fraud" that plaintiff claims to exist, and find no other evidence that would suggest that it occurred. Dr. Henderson presented a perfectly reasonable and essentially uncontroverted explanation for the existence of the two operative reports in Balthazar's hospital chart. Moreover, the second report was clearly designated "REDICTATION," thereby providing notice to anyone viewing the chart that another version had been previously given by her to the transcriber. Neither report contained overtly exculpatory or inculpatory material. Both were dictated before damage to the ureter was discovered. Thus, this is not a case in which there is evidence of deliberate destruction or alteration of medical records in anticipation of suit. Compare Rosenblit v. Zimmerman, 166 N.J. 391, 766 A.2d 749 (2001). Both operative reports existed in the chart essentially from the outset, and both were available to Balthazar for her analysis and use.
Moreover, we note the fact that, aside from what appear to have been dictation or transcription errors, the records are essentially similar as they relate to Henderson's visualization of Balthazar's ureters. The first report states the following:
Attention was then directed towards identifying the left and right ureter. The retroperitoneal space was entered posteriorly on the left side and on the right side and the ureter was identified on the medial ligament of the peritoneum. The ureter was identified on the right side as well and the medial ligament.
The second report states:
Attention was then directed towards identifying the left and right ureters. The retroperitoneal space was entered posteriorly on the left side and the ureter was identified along the medial ligament [handwritten: broad ligament] of the peritoneum. The ureter was identified in a similar fashion on the left side as well.
Any "fraud" is thus inconsequential.
As a final matter, we again note that no reference in either of Henderson's reports exists to suturing or transecting the left ureter. That information appears elsewhere in the hospital chart in documents whose accuracy and authenticity is uncontroverted. Thus, even if we were to acknowledge fraud in what appears to us to have been an innocent re-dictation, we can find no causal relationship between that fraud and any inability on plaintiff's part to determine the nature of her injury and prepare an affidavit of merit. In this case, like many others, defendants claim that the damage that was inflicted was unknown to them and thus was unrepaired and unrecorded.[8] This asserted lack of knowledge on defendants' part provides a factual foundation for Balthazar's malpractice claim. It does not provide grounds for avoidance of the requirements of the affidavit of merit.

II.
Balthazar argues additionally that the doctrine of substantial compliance applies to her case as the result of our decision in Hefferon v. Gitler, 346 N.J.Super. 141, 787 A.2d 222 (App.Div.2001). However, in Hefferon, the plaintiff served the detailed report of her expert within 120 days of the *1065 date upon which the defendant had filed his answer. In that circumstance, we held, plaintiff's conduct constituted substantial compliance with statutory mandates. In the course of that decision, we recognized a decisional trend to avoid a technical rejection of legitimate malpractice claims when the doctrine of substantial compliance or the existence of extraordinary circumstances could be invoked to preserve them. Id. at 149, 787 A.2d 222 (citing Palanque v. Lambert-Woolley, 168 N.J. 398, 405, 774 A.2d 501 (2001) (discussing instances of substantial compliance, although not finding it to be present), Fink, supra, 167 N.J. at 561, 772 A.2d 386 (finding substantial compliance when defendant was served with an affidavit that did not name him, but he was nonetheless on notice of the claim against him as the result of service of an expert's report that discussed defendant's role in the alleged malpractice), and Galik, supra, 167 N.J. at 355-56, 771 A.2d 1141 (2001) (substantial compliance demonstrated when plaintiff served unsworn expert reports on defendants eight months before litigation was commenced)). See also Mayfield v. Community Med. Assocs., 335 N.J.Super. 198, 207-08, 762 A.2d 237 (App.Div.2000) (substantial compliance found when affidavit had been filed with the court but not served, but an expert's report had been produced to the parties).
However, in order to invoke the substantial compliance doctrine, a plaintiff still must demonstrate "(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not a strict compliance with the statute." Galik, supra, 167 N.J. at 353, 771 A.2d 1141. See also Bernstein v. Board of Trustees of Teachers' Pension & Annuity Fund, 151 N.J.Super. 71, 76-77, 376 A.2d 563 (App.Div.1977).
In the present case, Balthazar claims to have retained an expert before litigation was commenced. However, she took no steps to comply with the statute or its purpose by assuring defendants that there was merit to her malpractice action until after the 120-day statutory period had run. She neither served an expert's report, nor an affidavit demonstrating compliance with N.J.S.A. 2A:53A-28 and explaining why such service was not possible. Further, she provided no adequate reason for her noncompliance. Thus, her conduct was similar to that of plaintiff in Palanque, which the Supreme Court found insufficient to constitute substantial compliance.[9]
In both Galik, supra, and Fink, supra, the plaintiffs took a series of steps that notified the defendants about the merits of the malpractice claims filed against them. Here, no such action was taken. Plaintiff obtained an expert report but did not provide the report or an affidavit to defendant. The action taken by plaintiff falls short of meeting the elements of substantial compliance.

[Palanque, supra, 168 N.J. at 405, 774 A.2d 501.]

*1066 III.
As a final matter, Balthazar claims that extraordinary circumstances excuse her failure to timely comply with statutory mandates. She supports this argument by noting that the Henderson defendants delayed production of their office records until February 18, 2000, long after those records had been requested and a day after their motion to dismiss had been filed. We do not condone defendants' conduct in this regard.[10] Nonetheless, we cannot find that the delay in any fashion prevented Balthazar from complying with the relatively minimal requirements of the affidavit of merit statute. See In re Petition of Hall, supra, 147 N.J. at 392, 688 A.2d 81; Medeiros v. O'Donnell & Naccarato, Inc., 347 N.J.Super. 536, 542, 790 A.2d 969 (App.Div.2002). In reaching this conclusion, we note that any negligence practiced upon Balthazar occurred during the course of her hysterectomy, while she was hospitalized at ACMC. It did not occur in the offices of the Henderson defendants.
Moreover, we again note that the fact of damage to the left ureter was disclosed through the tests conducted by and the operative report prepared by Dr. Kimmel. All records of the hysterectomy, the subsequent investigation of the condition of Balthazar's ureter, and its surgical repair were contained in the ACMC hospital chart, which was at all relevant times available to plaintiff. As a final matter, we note that, in the affidavit supplied on March 8, 2000, plaintiff's expert, Max I. Lilling, M.D. confines his claim of negligence on the part the defendant physicians solely to conduct occurring during the course of surgery.
We thus see no basis for Balthazar's claim that the Henderson defendants' delay in production of their office records in any fashion affected her ability to timely produce an affidavit of merit. As we stated in Scaffidi,
a plaintiff is not relieved of the obligation to provide an affidavit of merit simply because a defendant has failed to respond to a document request within forty-five days; N.J.S.A. 2A:53A-28 applies only to "medical records or other records or information having a substantial bearing on preparation of the affidavit[.]" A plaintiff may request a great variety of documents to assist in the preparation of a case that are not essential for the preparation of an affidavit of merit.

[Scaffidi, supra, 343 N.J.Super. at 558, 779 A.2d 439.]
We find the office records upon which Balthazar relies in claiming extraordinary circumstances to have been non-essential to her demonstration of malpractice.[11] Plaintiff knew from the time of her urologic surgery the basic outlines of her injury, and at all relevant times she possessed those records that supported her claim: *1067 the records of ACMC, including all operative reports. Thus, we find that Balthazar had failed to demonstrate circumstances that are sufficiently extraordinary to have relieved her of her statutory obligations in this case.[12]See Davies v. Imbesi, 328 N.J.Super. 372, 378, 746 A.2d 40 (App.Div. 2000).
In Barreiro, we held that the 120-day period provided by statute does not constitute a non-extendable barrier if extraordinary circumstances warrant it. Id., 318 N.J.Super. at 472, 723 A.2d 1244. Nonetheless, we have limited the situations in which such circumstances can be found, and have rejected arguments that have as their foundation carelessness, lack of circumspection, lack of diligence, or ignorance of the law. Palanque v. Lambert-Woolley, 327 N.J.Super. 158, 164, 742 A.2d 1002 (App.Div.2000), rev'd on other grounds, 168 N.J. 398, 774 A.2d 501 (2001); Hyman Zamft & Manard L.L.C. v. Cornell, 309 N.J.Super. 586, 593, 707 A.2d 1068 (App.Div.1998). We class the arguments in this matter to be among those that are insufficient to warrant equitable relief.

IV.
As a final matter, Balthazar argues that the court committed error in denying as lacking factual support her motion to amend her complaint to assert causes of action for battery and fraudulent concealment. The decision to grant or deny such a motion lies within the court's sound discretion. Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 456-67, 713 A.2d 411 (1998); Fisher v. Yates, 270 N.J.Super. 458, 467, 637 A.2d 546 (App.Div.1994). In this regard, we have held that courts are free to refuse leave to amend when the newly asserted claim is not sustainable as a matter of law. Interchange State Bank v. Rinaldi, 303 N.J.Super. 239, 257, 696 A.2d 744 (App.Div.1997).
In the present case, we find Balthazar's claim of battery[13] on the part of the Henderson defendants to be unsupportable. Battery is an intentional tort that occurs when a physician operates without any authorization or performs surgery that is substantially different from that for which authorization was obtained. Colucci v. Oppenheim, 326 N.J.Super. 166, 180-81, 740 A.2d 1101 (App.Div.1999), certif. denied, 163 N.J. 395, 749 A.2d 369 (2000). See also Howard v. University of Medicine and Dentistry of N.J., 172 N.J. 537, 550, 800 A.2d 73 (2002). Here, damage to the ureter was an unfortunate outcome of surgery for which informed consent had been obtained. There is no evidence that either Henderson or Korzeniowski intended to damage the ureter, or that the placement of the constricting suture was intended as an unauthorized repair. Moreover, we note that causes of action alleging intentional torts that rely for their success upon proof of a deviation from the professional standard of care applicable to the profession are subject to the affidavit of merit requirement, regardless of their label. *1068 Couri v. Gardner, 173 N.J. 328, 340, 801 A.2d 1134 (2002); Risko v. Ciocca, 356 N.J.Super. 406, 412, 812 A.2d 1138 (App. Div.2003).
Finally, for the reasons discussed at length earlier in this opinion, we find no grounds for a claim of fraudulent concealment. We thus find no abuse of discretion by the trial court in denying Balthazar the right of amendment. See Falco v. Community Med. Ctr., 296 N.J.Super. 298, 325-26, 686 A.2d 1212 (App.Div.1997), certif. denied, 153 N.J. 405, 709 A.2d 798 (1998); Fox v. Mercedes-Benz Credit Corp., 281 N.J.Super. 476, 483-84, 658 A.2d 732 (App.Div.1995).
Affirmed.
NOTES
[1] We regard any arguments regarding the dismissal of claims against the medical group of DeStefano, Feldman, Kaufman & Korzeniowski, P.A., Atlantic City Medical Center, the University of Medicine and Dentistry of New Jersey School of Osteopathic Medicine and Richard Cooper, D.O. on motion for summary judgment to have been abandoned, since the order dismissing claims against them is not mentioned in Balthazar's notice of appeal, and no legal argument with respect to that order appears. Fantis Foods v. North River Ins. Co., 332 N.J.Super. 250, 266-67, 753 A.2d 176 (App.Div.), certif. denied, 165 N.J. 677, 762 A.2d 658 (2000); DeVane v. DeVane, 280 N.J.Super. 488, 490 n. 2, 655 A.2d 970 (App. Div.1995); Pressler, Current N.J. Court Rules, comment on Rule 2:6-2 (2003).
[2] The record is unclear as to whether a transection occurred. The operative report of the surgeon performing later urological repairs stated:

At this time the dissection was brought along the ureter down into the pelvis where there was identified a stitch which was surrounding the ureter and tissue around it. This was incised. It freed it, however the ureter was still dilated. Upon further coming down there was an area of inflammation. It was noted there were other stitches involved with the distal portion of the ureter. It was identified that the ureter then was freed and was then separated from the underlying tissue. The incised ureter was noted to have good function with good urine coming out of the superior end of the ureter.
In his deposition, Dr. Kimmel stated:
The initial suture that we ran into in the second operation had thea distal portion of the ureter, which was transected, so, yes, it was ligated, or cut, and had a suture around it with some vascular structures. Balthazar asserts that she could not have known of the transection of the ureter until Dr. Kimmel's deposition was taken on November 3, 2000. After that deposition, Balthazar submitted an additional expert report dated February 26, 2001 from Marvin A. Krane, M.D. in which severance of the ureter was listed as an additional act of malpractice. We agree with the trial court that the late discovery that the ureter was severed did not serve to extend the time for filing of an affidavit of merit, since severance was merely another incident of the underlying damage claimed to exist.
[3] ACMC moved on February 16, 2000. The Henderson defendants moved one day later.
[4] The official name of the act is "An Act concerning tort reform and the negligence or malpractice of certain licensed persons and supplementing Title 2A of the New Jersey Statutes."
[5] The Supreme Court has held that it is not necessary to move within the initial 60-day period provided in N.J.S.A. 2A:53A-27 for an extension of the period for filing an affidavit of merit to 120 days, if good cause for the extension is shown. Burns v. Belafsky, 166 N.J. 466, 475, 766 A.2d 1095 (2001). However, in this case Balthazar did nothing until after the 120-day period had ended.
[6] We do not find the argument of unconstitutionality, which does not appear to have been raised below, to have sufficient merit to warrant further discussion in a written opinion. See R. 2:11-3(e)(1)(E). See also Cornblatt, 153 N.J. at 247-48, 708 A.2d 401; Barreiro, supra, 318 N.J.Super. at 468-69, 723 A.2d 1244.
[7] The passage thus read: "The muscle that had been partially transected was reapproximated using the overlying fascia. Hemostasis was noted to be good on that dissected portion."
[8] Balthazar claims on appeal that defendants deliberately sutured the left ureter to disguise the fact that it had been severed and that they deliberately misled her into believing that the sutures were accidently placed during closing. No support for the claim of deliberate misinformation is provided, and we find no evidence of such in the record.
[9] In Palanque, a case in which the defendant acknowledged that he had mistaken specimen identification numbers for lab results on two occasions and therefore incorrectly reported that plaintiff was pregnant, the Court nonetheless preserved plaintiff's cause of action by finding that the existence of malpractice in the circumstances could be determined through an exercise of common knowledge. Palanque, supra, 168 N.J. at 407, 774 A.2d 501. In the present case, in which damage to the left ureter was a risk of surgery as the result of the proximity of the ureter to the locus of that surgery, expert testimony is required as an aid to the jury in resolving the negligence issue.
[10] We do, however, recognize defendants' argument that the records were not produced because Balthazar never paid defendants' modest copying fee, despite a request that she do so.
[11] We distinguish our decision in Aster ex rel. Garofalo v. Shoreline Behavioral Health, 346 N.J.Super. 536, 788 A.2d 821 (App.Div.2002) in this regard. In Aster, plaintiff sought the records of the institution in which the alleged malpractice occurred. In those circumstances, we recognized a presumption that the records would have a substantial bearing on the preparation of an affidavit of merit, and held that the presumption had not been rebutted. Here, the essential hospital records had been produced, and the missing records were wholly collateral in nature. Thus, any presumption that could arise in these circumstances has been overcome. Moreover, in Aster, an affidavit was filed by the plaintiff pursuant to N.J.S.A. 2A:53A-28, albeit late. In the present case, no compliance with the act's escape provision occurred.
[12] Additionally, we note language in Cornblatt that suggests that a showing of extraordinary circumstances would only convert the dismissal of Balthazar's suit into a dismissal without prejudice. Cornblatt, supra, 153 N.J. at 247, 708 A.2d 401. See also Davies v. Imbesi, 328 N.J.Super. 372, 376, 746 A.2d 40 (App.Div.2000); Hyman Zamft & Manard L.L.C. v. Cornell, 309 N.J.Super. 586, 593, 707 A.2d 1068 (App.Div.1998). Such a dismissal would be of no benefit, since the statute of limitations had expired by the time that dismissal occurred.
[13] The record on appeal does not contain Balthazar's motion to amend her complaint or her proposed amended pleading. We assume that the claim of battery arises out of the infliction of damage by the Henderson defendants on Balthazar's left ureter.