788 A.2d 821 (2002)
346 N.J. Super. 536
Francine M. ASTER, Guardian Ad Prosequendum of Salvatore GAROFALO, and Ann Garofalo, his wife, Plaintiff-Appellant,
v.
SHORELINE BEHAVIORAL HEALTH, an affiliate of Saint Barnabas Health Care System, a/k/a Shoreline Behavioral Health Center, et al, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued November 13, 2001.
Decided January 18, 2002.
*822 Joel M. Bacher, Wayne, argued the cause for appellant (Mr. Bacher, of counsel and on the brief).
Laura H. Walter argued the cause for respondent (Ronan, Tuzzio & Giannone, attorneys; Ms. Walters of counsel and on the brief).
Before Judges PETRELLA, KESTIN, and ALLEY.
*823 The opinion of the court was delivered by ALLEY, J.A.D.
In this appeal, we apply N.J.S.A. 2A:53A-28, a provision of the Affidavit of Merit Statute, N.J.S.A. 2A:53A-26 to 29, and we do so in the context of the right of a patient or the patient's legal representative to obtain his or her own medical records. Plaintiff, well before the institution of suit, and therefore before the running of the time for filing an affidavit of merit pursuant to N.J.S.A. 2A:53A-27,[1] requested that Shoreline Behavioral Health, now a defendant in this action, provide medical records that plaintiff contends had a substantial bearing on the preparation of an affidavit of merit. To support these requests, plaintiff supplied Shoreline with appropriate signed authorizations. Plaintiff also requested medical records by serving a formal notice to produce following the start of this litigation. Shoreline, however, never furnished the requested documents, either before or after suit was instituted, but it eventually moved to dismiss the complaint for failure to provide an affidavit of merit assertedly required by the statute. The Law Division dismissed the action. We reverse, holding that, in the circumstances before us, the records requested by plaintiff presumptively had a substantial bearing on the ability to prepare an affidavit of merit, Shoreline did not establish a basis for a contrary finding, and plaintiff timely complied with N.J.S.A. 2A:53A-28, which in prescribed conditions alleviates the requirement of filing an affidavit of merit.[2]
The background is this. On or about September 3, 1998, eighty-four-year-old Salvatore Garofalo was admitted to the custody of defendant shoreline. Upon his arrival there, Garofalo was in restraints. While under defendant's care and custody, plaintiff asserts, the restraints were removed and Garofalo was given medication which caused him to become drowsy and disoriented. Allegedly unattended by Shoreline, he fell and suffered serious injuries, including a fractured hip.
Francine Aster, then acting as counsel for Garofalo, sought discovery of his medical records from Shoreline before filing the complaint in this litigation. Initially, on September 30, 1998, she sent a letter to Shoreline's medical records director requesting the release of the medical records, and she enclosed with the request a medical authorization executed by Garofalo. Shoreline, mistakenly referring to it *824 as a "subpoena," denied the request for Garofalo's records on October 6, 1998.
Aster made a further pre-litigation attempt to obtain Garofalo's medical records on December 30, 1998, again sending Shoreline a completed medical records form for the release of medical records, as requested by Shoreline, along with Garofalo's power of attorney, which authorized her to act on his behalf. On January 27, 1999, Shoreline denied this request for medical records, stating that "per the instructions of our legal department, we are not allowed to release the medical records due to irregularities in the power of attorney documentation." Shoreline stated with respect to the power of attorney, "... we will not accept an authorization that does not have an original signature, ..." notwithstanding an express provision in Garofalo's power of attorney reading, "[a] photostatic copy of the Power of Attorney shall be as valid and as evidential as the original thereof."[3]
On June 24, 1999, Aster filed a complaint in the Law Division as Garofalo's guardian ad prosequendum, alleging that Shoreline among others had caused Garofalo's injuries, and that it had breached its duty of care by failing to keep Garofalo "safe and free from harm while in ... [its] care, custody and control" and by not taking measures "to monitor him and/or properly secure him in a safe place." Garofalo died on July 8, 1999, soon after the complaint was filed.
On or about March 3, 2000, Aster sent Shoreline a notice to produce documents, still not having received any documents in response to her previous requests. If the non-filing of an affidavit of merit did not come within the protection of N.J.S.A. 2A:53A-28, the affidavit would have been due within sixty days of the filing of Shoreline's answer on or about November 22, 1999, or, at the latest, after a sixty-day extension from that date as authorized by N.J.S.A. 2A:53A-27, if leave of court for the extension were granted. Aster's efforts to obtain the documents had, however, as already mentioned, begun well before the expiration of that time. Aster applied to the trial court by a motion dated April 11, 2000, for leave to file a "sworn statement in lieu of [an] ... affidavit [of merit]," as provided by N.J.S.A. 2A:53A-28, because Shoreline had not provided her with the information to aid her filing the affidavit of merit. On June 23, 2000, however, the trial court entered an order dismissing the complaint for failure to file an affidavit of merit. Aster appeals from that order.
To support her position on appeal that dismissal of the complaint for failure to submit an affidavit of merit was erroneous, Aster again invokes N.J.S.A. 2A:53A-28. She contends, and Shoreline denies, that Shoreline's refusal to provide Garofalo's medical records was a significant factor as to why an affidavit of merit was not filed, or in the statutory language, that the records Shoreline failed to provide "had a substantial bearing on preparation of the affidavit...." As already noted, on three separate occasions medical records were requested from Shoreline, twice by letters from Aster and once by a notice to produce. These efforts began well before suit was filed. Shoreline consistently failed to furnish the documents sought by all these requests. If this failure to produce Garofalo's documents had a "substantial bearing" on Aster's inability to prepare an affidavit of merit, her request to submit a sworn statement in lieu of an affidavit of *825 merit under N.J.S.A. 2A:53A-28 should have been approved.
Shoreline asserts it acted properly by refusing Aster's document requests. It says that the initial request for medical records, made in September 1998, was denied because the authorization sent with the request was invalid inasmuch as it did not have an original signature. Shoreline further states that the medical records request sent by Aster in December 1998 was denied based upon irregularities in the power of attorney. Almost a year and one-half later, in March 2000, Aster sent Shoreline a notice to produce documents. Shoreline again did not supply those documents.
In our view, an affidavit of merit was required unless sufficient grounds existed to permit plaintiff to file a "sworn statement in lieu of the affidavit [.]" N.J.S.A. 2A:53A-28.[4] We conclude, however, that those grounds were present.[5]
Shoreline acknowledges in its brief, "A licensed professional should not be permitted to wrongfully withhold records and then also assert that the plaintiff has not stated a cause of action because the plaintiff has failed to provide an affidavit where the records are a necessary component in procuring such an affidavit." We agree. Indeed, it is Shoreline's attempt to use, as both a sword and shield, the absence of the very records it has failed to divulge, which underscores the fundamentally unsound nature of its position. This conclusion does not require a finding that Shoreline acted in bad faith in failing to provide records to plaintiff, notwithstanding repeated requests, both before and after the filing of suit. We do not take issue with Shoreline's view that a medical institution, and in particular one where mental health care issues are implicated, has legitimate reason to be concerned about responsibility for wrongful release of patient information. Patient confidentiality merits a high degree of protection. We remain unconvinced, however, that Shoreline had an objectively adequate basis for withholding production of medical records in the present circumstances, where the records have been requested by a patient and his legal representative.
Nevertheless, good faith or not, the end result of Shoreline's non-production was the lack of medical records and the lack of an affidavit of merit. In that connection, we are persuaded that in the context *826 of the facts presented here, and in the language of N.J.S.A. 2A:53A-28, it should be presumed that the "medical records or other records or information" not produced have had "a substantial bearing on preparation of the affidavit," and that the burden of establishing otherwise should be borne by the party that has not produced the records, here Shoreline. At least that should be true where, as in this case, no such records have ever been produced to the patient or his legal representative.
We need not decide whether non-production by Shoreline constituted spoliation of evidence or sanctionable discovery misconduct, but we can in any event draw useful comparisons from cases that have considered issues pertaining to spoliation, see, e.g., Rosenblit v. Zimmerman, 166 N.J. 391, 766 A.2d 749 (2001), and discovery abuse, see, e.g., Manorcare Health Services v. Osmose Wood Preserving, Inc., 336 N.J.Super. 218, 764 A.2d 475 (App.Div. 2001), in imposing on the non-producing party the burden as to these important consequences of non-production. It is neither just nor appropriate to expect a party that has been deprived of medical records by a failure of its adversary to produce them to bear the burden on this issue. Indeed, it is difficult to grasp how a plaintiff who has never seen the documents could be specific as to how the unknown documents could have a bearing on the affidavit. On the facts before us, we consider the never-produced medical records requested by the patient and the patient's legal representative to have a presumptively substantial bearing on the preparation of the affidavit of merit, in the context of an application under N.J.S.A. 2A:53A-28. Requiring the non-producing party in these circumstances to establish the contrary is not a sanction, nor is it as onerous as a preclusion order or fine, which might be applied in a spoliation or discovery sanction case. It is merely a simple and fair allocation of responsibilities under the statute with respect to those who seek, as does Shoreline, to invoke its provisions.
Shoreline plainly did not, on the present record, make a showing sufficient to overcome this presumption that the records it failed to furnish had "a substantial bearing on preparation of the affidavit [.]" N.J.S.A. 2A:53A-28. As a result, plaintiff has satisfied that element of the statute.
We also address the timing of plaintiff's application under N.J.S.A. 2A:53A-28 to submit a sworn statement in lieu of an affidavit of merit, which was not filed until April 11, 2000, or more than 120 days after Shoreline answered the complaint on November 22, 1999. N.J.S.A. 2A:53A-27 allows an affidavit of merit to be filed within sixty days of the answer, or within another sixty-day period of extension therefrom if leave is granted by the court. See, Galik v. Clara Maass Medical Center, 167 N.J. 341, 351, 771 A.2d 1141 (2001). We are satisfied that under a sensible reading of the statute, for purposes of determining the timeliness of an application to file a "sworn statement" under N.J.S.A. 2A:53A-28, the application should relate back to the beginning of plaintiff's efforts to obtain the documents referred to in its application under that provision. As we have noted, these efforts, which Shoreline's stonewalling thwarted, began well before the affidavit of merit filing deadline, because they commenced even prior to suit and continued thereafter.
The very existence of an express statutory "sworn statement" mechanism to deal with the absence of an affidavit of merit in the types of circumstances to which we have referred makes it plain that the Legislature recognized that in some circumstances an affidavit could not be prepared. Although the affidavit of merit requirement is imposed by a statute rather *827 than a Rule of Court, in our view, because of the statute's intersection with the practice of law and its strong connection to the prosecution of a certain category of civil actions, it is entirely appropriate to construe it in the same spirit of liberality that is accorded to the interpretation of a number of our rules. See, e.g., Pressler, Current N.J. Court Rules, Comment 2 on R. 4:10-2 and Comment 2 on R. 4:17-7 (2002). True, the statute is intended to "require plaintiffs in malpractice cases to make a threshold showing that their claim is meritorious" so that suits without merit can be identified early on in the litigation process, In re Petition of Hall, 147 N.J. 379, 391, 688 A.2d 81 (1997). The Legislature that created the affidavit of merit requirement also created the "sworn statement" safety valve, however, and we see no legislative purpose that would be served by construing or applying that provision restrictively.[6]
In our view, it advances the legitimate purposes of this safety valve to relate back the timeliness of the sworn statement application, particularly inasmuch as the Affidavit of Merit Statute is not to be read in a purely mechanical fashion. See Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 239, 708 A.2d 401 (1998); Hefferon v. Gitler, 346 N.J.Super. 141, 787 A.2d 222 (App. Div.2001); May field v. Community Medical Associates, P.A., 335 N.J.Super. 198, 205, 762 A.2d 237 (App.Div.2000). This approach is also consistent with the result in Burns v. Belafsky, 166 N.J. 466, 475-77, 766 A.2d 1095 (2001), which "rejected a defendant's contention that an application for a sixty-day extension [to file an affidavit of merit under N.J.S.A. 2A:53A-27] must be made within the first sixty-day period prescribed by the statute, declining to superimpose that precondition on the statute because it would neither advance the legislative purpose nor conform with well-established principles of statutory interpretation." Galik v. Clara Maass Medical Center, supra, 167 N.J. 341 at 351, 771 A.2d 1141. In the circumstances before us, it is appropriate to relate back the timeliness of the N.J.S.A. 2A:53A-28 application to the making of plaintiff's initial request for the never-furnished information.
We acknowledge that we apply relation-back principles here in a different context from the setting in which they are ordinarily used. They are more typically encountered in considering attempts to amend pleadings, often when a statute of limitations has expired after the date of the original pleading and the question is whether the amendment should be allowed to speak as of the original filing. The practice in New Jersey with respect to pleadings is governed by R. 4:9-3. See generally, Pressler, Current N.J. Court Rules, Comment 1 on R. 4:9-3, at 1312 (2002). We see no reason conceptually why the same principles should not apply equally in the present circumstances. Many of the same considerations apply, such as the fairness to the respective parties of allowing or disallowing relation back. Fairness in turn is, to a large extent, a question of notice to the opponent of a proposed amended claim or defense, which under R. 4:9-3 depends on whether "it arose out of the conduct, transaction or *828 occurrence set forth or attempted to be set forth in the original pleading [.]"
In the present case, allowing relation back would permit the Affidavit of Merit Statute's timeliness requirements to be satisfied but would work no prejudice and would allow no essential change in the claims with which Shoreline would be faced. Shoreline had fair notice from the earliest pre-litigation stages of plaintiff's attempts to have it provide documents. It must have been well aware that Garofalo had been admitted to its facility and sustained an injury there, and it acknowledged efforts made by his legal representative to obtain documents. To apply the Affidavit of Merit Statute in the manner we have described distorts neither the statute nor the doctrine. Indeed, the Legislature enacted the statute in the context of modern civil pleading and practice. We have no doubt that it is entirely appropriate to invoke the doctrine of relation back, inasmuch as this enactment closely bears on civil practice and the sufficiency of malpractice pleadings. The affidavit of merit, when required, in effect is an essential element of the complaint itself. Nor ought we overlook the principle, which has a convincing ring in this context, that the rule respecting relation back of pleadings, as Justice Hall noted, "should be liberally construed. Its thrust is directed not toward technical pleading niceties, but rather to the underlying conduct, transaction or occurrence giving rise to some action or defense." Harr v. Allstate Insurance Co., 54 N.J. 287, 299, 255 A.2d 208 (1969).
In this setting, we are reminded that "one of the most difficult `problems which a legal system must face is a combination of a due regard for the claims of substantial justice with a system of procedure rigid enough to be workable.'" Clark Byse, Suing the "Wrong" Defendant in Judicial Review of Federal Administrative Action: Proposals for Reform, 77 Harv. L.Rev. 40, 45 (1963), (quoting 2 Holdsworth, A History of English Law 196 (1909)).[7] We are satisfied that to the extent rigidity is necessary in the application of the Affidavit of Merit Statute, it will not be sacrificed by the result we have reached, which reflects "a due regard for the claims of substantial justice [.]" Indeed, it would be entirely contrary to the avoidance of hyper-technicality that has characterized the Supreme Court's interpretation of the Affidavit of Merit Statute, at least from its decision in Cornblatt v. Barow, supra, for us to affirm the dismissal of plaintiff's complaint and thus embrace an unduly restrictive interpretation of the Statute.
In Scaffidi v. Horvitz, 343 N.J.Super. 552, 779 A.2d 439 (App.Div.2001), the court held that the safety valve of "N.J.S.A. 2A:53A-28 must be construed to require a *829 plaintiff to identify with specificity any medical records or other information he believes are needed to prepare an affidavit of merit, in order to trigger the running of the forty-five-day period for a response." Id. at 559, 779 A.2d 439. We do not take that decision to apply to the circumstances with which we are presented here, or, in the context of the facts before us, to justify any restriction on the availability of the "sworn statement" remedy.[8] Application in this case of the type of limitation established in Scaffidi would provide a wholly undeserved windfall to the non-producing party, which surely could have inferred, if not the particular use plaintiff intended to make of plaintiff's own medical records, at least that they were being sought in respect of litigation or a claim.[9]
In our view, then, because the "sworn statement" procedure provided by N.J.S.A. 2A:53A-28 should be sensibly and not restrictively construed, it is appropriate in the circumstances of this case to presumptively deem the medical records not produced to the patient and his legal representative to have had "substantial bearing on preparation of the affidavit," and to require the non-producing party, here Shoreline, to establish otherwise. For the same reasons, we deem to have been timely made the request by plaintiff to file a "sworn statement" that ensued from unhonored document requests antedating not only the expiration of the two sixty-day periods prescribed in N.J.S.A. 2A:53A-27 but also the filing of suit.
The order appealed from is reversed, and we remand to the Law Division.
NOTES
[1] That provision reads:

In any action for damages resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of the filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill, or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.
[2] N.J.S.A. 2A:53A-28 provides:

An affidavit [of merit] shall not be required... if the plaintiff provides a sworn statement in lieu of the affidavit setting forth that: the defendant has failed to provide plaintiff with medical records or other records or information having a substantial bearing on preparation of the affidavit; a written request therefor along with, if necessary, a signed authorization by the plaintiff for the release of the medical records or other records or information requested, has been made by certified mail or personal service; and at least 45 days have elapsed since the defendant received the request.
[3] Shoreline furnished a medical records release form to plaintiff two months later that cited only the unspecific, incomplete, and unhelpful reference to "New Jersey State and Federal Law (42 CFR)" as the basis for its claim of a right to withhold information.
[4] Aster's contention that the affidavit of merit requirement is inapplicable because this is a "common knowledge" case is incorrect. On the contrary, this case allegedly entails the care with which licensed professionals were exercising their professional responsibility and judgment. Thus, although our Supreme Court in Hubbard v. Reed, 168 N.J. 387, 774 A.2d 495 (2001), determined that an affidavit of merit is not required in a "common knowledge" case, this does not aid Aster because the case does not come within that doctrine. In Hubbard v. Reed, a dentist pulled the wrong tooth, and it has long been settled that that is a matter of common knowledge. Id. at 396, 774 A.2d 495. Because plaintiff's predicate for liability as asserted in the complaint is the manner in which a "licensed person" exercised responsibilities and judgment, and because the respects in which the deficiencies occurred, if indeed they did occur, is not a matter within the knowledge of the average citizen or juror, plaintiff would need an expert in order to make out a prima facie case before the jury.
[5] We are not unsympathetic with the plight of the motion judge, who was forced to reach a ruling in the context of a record that the parties had left conspicuously incomplete. In that context, we note that certain documents not included in the record on appeal were referred to at oral argument and at our request were furnished to us subsequent to oral argument, and we have for purposes of this appeal deemed those additional documents, including the power of attorney to which we have referred, part of the record before us.
[6] It is also our view that the effect of Shoreline's acknowledgment of receipt of plaintiff's requests for documents is to substantially satisfy the statutory requirements in N.J.S.A. 2A:53A-28. Thus, although that section provides that the request should be "made by certified mail or personal service ...," there is no practical need for such formalities on the present facts because they are not needed to prove what Shoreline admits: its receipt of the requests.
[7] This insightful article advocated a remedy to an interpretive approach that resulted in several rigid refusals by federal courts to permit relation back in order to cure the misnaming of the proper governmental defendant in Social Security benefit appeals. According to the article, "[t]he decisions denied judicial review to claimants for benefits under the Social Security Act. The reason for the denials was the plaintiffs' failure to bring their review actions against the incumbent Secretary of Health, Education, and Welfare. Instead, they mistakenly named the `wrong' defendant. In the four cases, the defendants named were, respectively: the United States; Marion B. Folsom, Secretary of Health, Education, and Welfare (who had been succeeded in office by Arthur S. Flemming nineteen days before the complaint was filed); the Department of Health, Education, and Welfare; and, finally, the Federal Security Administration. Although, for all that appears, the Government was in no way prejudiced by the failure to name the incumbent Secretary, because of their mistakes in naming the `wrong' defendant the plaintiffs were deprived of judicial review." Byse, supra, 77 Harv. L.Rev. at 40-41.
[8] Scaffidi involved facts that were considerably different than those presented by this appeal. In Scaffidi, there had not been any pre-litigation document requests, and thus no pre-litigation failures to provide documents. Plaintiff in Scaffidi initially sought relief, not by seeking leave to file a sworn statement in lieu of an affidavit of merit under N.J.S.A. 2A:53A-28, but leave pursuant to N.J.S.A. 2A:53A-27 for a sixty-day extension to file the affidavit of merit. And, in striking contrast to the present facts, the plaintiff in Scaffidi received the documents with more than sixty days left to file an affidavit merit under an extension of time consented to by the opposing party and approved by the court under N.J.S.A. 2A:53A-27.
[9] By contrast to what we have said about Scaffidi, we note that the facts in Davies v. Imbesi, 328 N.J.Super. 372, 746 A.2d 40 (App. Div.2000), a medical malpractice case, were much closer to the facts presented to us here. There, as in this case, plaintiff's counsel initiated and pursued an attempt to obtain copies of plaintiff's medical records from defendants, including copies of x-ray films taken of plaintiff. The x-ray films were not received until after 120 days from the date on which the last answer of the defendants was filed. The court rejected plaintiff's claim that this constituted "exceptional circumstances" under N.J.S.A. 2A:53A-28 and dismissed the complaint for failure to provide an affidavit of merit. We do not say that we necessarily would have reached the same result, but we note a number of circumstances in Davies that distinguish it from this case to some extent and make it unnecessary for us here to disavow the viability of Davies. First, the efforts of counsel in Davies to obtain the x-rays apparently did not begin until after the complaint was filed, even though plaintiff asserted that they were necessary for preparation of the affidavit of merit. Second, after the motion to dismiss was filed, counsel in Davies was able to prepare an affidavit of merit based on the x-ray report, without having the actual films. Third, it is also has some significance that the bulk of plaintiff's medical records, except for the films, were produced by defendants to plaintiff's counsel and not withheld in the face of repeated requests for the patient's own records.