**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1200-15T2

RICHARD J. MANGONE, JR.,
Administrator of the Estate
of KATHLEEN ANN MANGONE, and
RICHARD J. MANGONE, JR.,
Individually,

    Plaintiffs-Appellants,

v.

MORRIS COUNTY SURGICAL CENTER,
and JOHN G. SORIANO, M.D.,

    Defendants,

and

VADIM BARG, M.D.,

    Defendant-Respondent.

_____

Argued March 22, 2017 — Decided October 17, 2017

Before Judges Simonelli, Carroll and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-2661-14.

Thomas D. Flinn argued the cause for appellant (Garrity, Graham, Murphy, Garofalo & Flinn, PC, attorneys; Mr. Flinn, on the briefs).

Sam Rosenberg argued the cause for respondent Vadim Barg, M.D. (Rosenberg Jacobs & Heller, PC, attorneys; Mr. Rosenberg, of counsel; Jayne E. Turner and Douglas F. Ciolek, on the brief).

The opinion of the court was delivered by

GOODEN BROWN, J.A.D.

In this medical malpractice case, plaintiff appeals from companion orders entered on June 15, 2015, which denied his motion to be relieved from the requirements of N.J.S.A. 2A:53A-27, and dismissed his complaint with prejudice against defendant Vadim Barg, M.D.  The trial court dismissed the complaint because plaintiff failed to file an affidavit of merit (AOM) as required by N.J.S.A. 2A:53A-27.  The court denied plaintiff's application for relief from the statutory requirement because he failed to establish grounds for filing a sworn statement in lieu of an AOM (SIL) under N.J.S.A. 2A:53A-28.  Plaintiff argues the court should have permitted him to file a SIL.  We disagree and affirm.

I.

A motion to dismiss for failure to provide an AOM or SIL is equivalent to a motion to dismiss for failure to state a cause of action.  N.J.S.A. 2A:53A-29.  As a result, we recite the facts in the light most favorable to plaintiff.  Nostrame v. Santiago, 213 N.J. 109, 113 (2013).  Kathleen Ann Mangone stopped breathing and

developed bradycardia[1] and pulseless asystole[2] during an esophagogastroduodenoscopy (EGD)[3] procedure at defendant, Morris County Surgical Center (MCSC), on June 24, 2013. She was rushed to the hospital and placed on life support, where she remained until her death on July 1, 2013. Defendant, John G. Soriano, M.D., was the gastroenterologist, and defendant Vadim Barg, M.D., was the anesthesiologist. On October 27, 2014, Kathleen Mangone's husband, plaintiff Richard Mangone, Jr., individually and in his capacity as administrator of the estate, filed this action alleging medical malpractice by defendants.

---

[1] Bradycardia "is a slower than normal heart rate." Mayo Clinic Staff, Diseases and Conditions, Bradycardia, Definition, MAYO CLINIC (Aug. 23, 2017), http://www.mayoclinic.org/diseases-conditions/bradycardia/basics/definition/con-20028373.

[2] Asystole "is a state of cardiac standstill with no cardiac output and no ventricular depolarization, . . . [and] eventually occurs in all dying patients." Sandy N. Shah, Asystole, MEDSCAPE (Dec. 26, 2015) http://emedicine.medscape.com/article/757257-overview.

[3] An EGD "is a procedure to diagnose and treat problems in [the] upper GI (gastrointestinal) tract[,]" which "includes [the] food pipe (esophagus), stomach, and the first part of [the] small intestine (the duodenum)." The procedure is performed "using a long, flexible tube called an endoscope[,]" which contains "a tiny light and video camera on one end." The tube is inserted "into [the] mouth and throat[,] . . . slowly pushed through [the] esophagus and stomach, . . . and into [the] duodenum." Upper GI Endoscopy, JOHN HOPKINS MEDICINE, http://www.hopkinsmedicine.org/healthlibrary/test_procedures/gastroenterology/esophagogastroduodenoscopy_92,P07717.

A-1200-15T2

Prior to filing suit, plaintiff requested medical records from MCSC related to his wife's procedure. Plaintiff received some, but not all, of the requested documents. On May 22, 2014, and again on June 18, 2014, plaintiff's counsel requested that MCSC produce the oxygen saturation monitoring and anesthesia records. MCSC responded that the records previously provided "included the manual record of monitored oxygen saturation." MCSC also provided Dr. Barg's anesthesia records and a transcription of his handwritten notes.

On October 27, 2014, plaintiff filed suit against MCSC, Barg, and Soriano. Defendants filed separate answers. Barg's and Soriano's answers each demanded an AOM.[4] On December 15, 2014, plaintiff served a subpoena duces tecum and ad testificandum as well as deposition notices on four MCSC employees, "who were present before, during and/or after the procedure[,]" demanding that they appear and produce "[a]ny notes in [their] possession in connection with the medical treatment of [the decedent] on June 24, 2013." Plaintiff explained that he wanted to depose these witnesses to determine whether they had information about the

---

[4] On May 13, 2015, the court dismissed plaintiff's complaint against Soriano with prejudice for failure to comply with the AOM statute, and a voluntary stipulation of dismissal with prejudice was entered on October 8, 2015, against MCSC. Plaintiff's appeal pertains solely to Barg.

decedent's heart rate and oxygen saturation levels, particularly whether the decedent's pulse oxygen was depressed before bradycardia set in.

Over the next three months, the four depositions were completed. Through the depositions, plaintiff learned there was an EKG machine monitoring oxygen saturation during the procedure that was capable of producing a print out or strip. However, according to one of MCSC's attending nurses, EKG strips were not generated during the decedent's procedure. Further, MCSC's former director of nursing testified during her deposition that when she returned to the operating room after the decedent had been transported to the hospital, she could not print out a monitoring strip from the EKG machine because the machine had already been "cleaned" and "shut off," and "there was nothing that [she] could see to retrieve at that point."

By then, the initial sixty-day period for filing an AOM was about to expire. On February 4, 2015, the court entered a consent order giving plaintiff an additional sixty days to serve an AOM, thereby extending the filing deadline to April 8, 2015 as to Barg. On February 6, 2015, plaintiff served a deposition notice for Barg to be deposed on February 19, 2015. In response, Barg's counsel requested that the deposition be postponed because of scheduling issues and the fact that plaintiff had yet to be deposed. Instead

of postponing, on February 18, 2015, plaintiff filed a motion to compel Barg's deposition pursuant to Rule 4:23-5(c). Plaintiff asserted that Barg's counsel's "preference that the plaintiff be the first to be deposed has no basis in the rules or the caselaw."

In a February 25, 2015 letter to the court opposing plaintiff's motion, Barg's counsel asserted "it is patently unfair for Dr. Barg to appear for his deposition without the requisite discovery responses, [AOM] and complete medical records in this matter." In a March 2, 2015 letter to the court replying to defendant's opposition, plaintiff asserted for the first time that his expert "advised that he will be unable to prepare an [AOM] until after Dr. Barg is deposed, due to the unique circumstances of this case."

On March 25, 2015, plaintiff filed a motion for permission to serve a SIL[5] or, alternatively, for an extension of time to serve an AOM. Plaintiff attributed its predicament to defendants' dilatory tactics and obstruction in failing to timely produce witnesses for deposition. In support, plaintiff's counsel certified that "[b]y failing to appear for deposition, . . . Dr.

---

[5] The statute does not expressly require that a plaintiff first seek leave from the court to file a SIL. However, to avoid the uncertainty that the SIL may be rejected, a plaintiff may reasonably seek advance approval of a SIL, so that alternative steps can be taken if the SIL is rejected.

Barg has failed to provide the plaintiff[] with information having a substantial bearing on the preparation of an [AOM]." According to plaintiff's counsel, because Barg's testimony "will be of vital import to determining the cause of [decedent's] death and have a substantial bearing on preparation of an [AOM,]" the court should "deem it unnecessary" for plaintiff to file an AOM "since at least forty-five days have elapsed since . . . Barg was served with a deposition notice," and "failed to appear for deposition[.]"

On April 7, 2015, plaintiff filed a SIL with the court[6] in which plaintiff's counsel essentially reiterated the certification accompanying the earlier motion. Plaintiff's counsel averred that their expert "could not prepare an [AOM] based on the medical records alone" because "the records were missing documentation pertaining to [the decedent's] heart rate and oxygen saturation levels during the procedure." According to plaintiff's counsel, "an affidavit of merit [was] not required pursuant to N.J.S.A. 2A:53A-27." Barg opposed the motion, confirming that the records at issue were previously provided to plaintiff, including Barg's transcription of his notations in the chart.

On April 13, 2015, Barg filed a motion to dismiss the complaint with prejudice for failure to serve an AOM. On June 15,

_____

[6] The SIL was sent to defense counsel on March 31, 2015.

2015, the court denied plaintiff's motions and granted Barg's motion, concluding that "not providing an [AOM] results in a failure to state a cause of action" pursuant to N.J.S.A. 2A:53A-29. The court rejected plaintiff's SIL and determined that plaintiff failed to make a written request for the discovery, as required by N.J.S.A. 2A:53A-28 and Scaffidi v. Horvitz, 343 N.J. Super. 552 (App. Div. 2001). The court explained that in plaintiff's various discovery demands, no mention was made to the opposing party that the information was necessary to complete an AOM. The court observed that plaintiff's March 2, 2015 letter to the court was the first time plaintiff notified defendant that their expert was unable to prepare an AOM without Barg's deposition.

According to the court,

> Scaffidi stands for the proposition that if a plaintiff is propounding discovery for purposes of gathering information . . . in order to assist -- or upon which an expert would base an affidavit of merit, there has to be notice of the need for the demanded information . . . by discovery request. There . . . must be notification to the . . . deponent or to counsel, to whomever it is that the information is required for purposes of preparation of an affidavit of merit . . . .
>
> Now here the earliest that Dr. Barg could have known anything about the need for his deposition relative to an affidavit of merit was the letter, reply letter of March 2nd filed in connection with . . . the effort to

compel his deposition. But that is not a sworn statement . . . and it doesn't comply with the statute.

The court noted that even if the March 2, 2015 letter could be construed as the required demand for the information, "the recipient has to get 45 days under the statute[,]" which would expire on April 16, 2015, beyond the April 8, 2015 AOM filing deadline. In addition, the court observed

> [T]he reply letter brief of March 2nd was addressed only to the need for Dr. Barg's testimony and not to the need for any medical records to be provided by Morris County Surgical Center. So there . . . was no clear statement throughout discovery that the information sought was crucial or important or significant to the preparation of the . . . affidavit of merit.

In denying plaintiff's request for another extension of the AOM filing deadline, the court relied on <u>Douglass v. Obade</u>, 359 <u>N.J. Super.</u> 159 (App. Div.), <u>certif. denied</u>, 177 <u>N.J.</u> 575 (2003), and determined it lacked authority to grant such a request. This appeal followed.

## II.

We exercise plenary review of the trial court's order dismissing plaintiff's complaint. <u>Rezem Family Assocs., L.P. v. Borough of Millstone</u>, 423 <u>N.J. Super.</u> 103, 114 (App. Div.), <u>certif. denied</u>, 208 <u>N.J.</u> 366 (2011); <u>R.</u> 4:6-2(e). Because statutory construction is a legal issue subject to de novo review, <u>Perez v.</u>

Zaqami, LLC, 218 N.J. 202, 209 (2014), we review de novo the court's interpretation of N.J.S.A. 2A:53A-28, and its determination that plaintiff was not entitled to avail himself of a SIL.

An AOM is "an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." N.J.S.A. 2A:53A-27. It must be filed within sixty days after a defendant files an answer, which the court may extend one time for no more than another sixty-day period. Ibid. The AOM statute is designed to require plaintiffs in a professional negligence action to show that their claims have merit, so that those that do not can be dismissed at an early stage of the litigation. Buck v. Henry, 207 N.J. 377, 393 (2011). However, the statute is not intended to create "hidden pitfalls" for meritorious claims. Id. at 383.

To that end, the statute provides a safety valve in the form of the SIL as follows:

> An affidavit shall not be required . . . if the plaintiff provides a sworn statement in lieu of the affidavit setting forth that: the defendant has failed to provide plaintiff with medical records or other records or

information having a substantial bearing on preparation of the affidavit; a written request therefor along with, if necessary, a signed authorization by the plaintiff for release of the medical records or other records or information requested, has been made by certified mail or personal service; and at least 45 days have elapsed since the defendant received the request.

[N.J.S.A. 2A:53A-28.]

"N.J.S.A. 2A:53A-28 reflects a legislative recognition that a plaintiff may be prevented from making [a threshold showing that the claims asserted are meritorious] if a defendant fails to produce essential medical records or other information." Scaffidi, supra, 343 N.J. Super. at 558. However, a defendant's failure to timely respond to a document request does not invariably relieve a plaintiff from complying with the AOM statute. Ibid. Rather,

N.J.S.A. 2A:53A-28 applies only to "medical records or other records having a substantial bearing on preparation of the affidavit[.]" A plaintiff may request a great variety of documents to assist in the preparation of a case that are not essential for the preparation of an affidavit of merit. Moreover, it generally would be difficult, if not impossible, for a defendant to distinguish between documents that have "a substantial bearing on preparation of the affidavit [of merit]" and documents that may simply aid the plaintiff in the eventual proof of a case at trial. Therefore, N.J.S.A. 2A:53A-28 must be construed to require a plaintiff to identify with specificity any medical records or other information he believes are needed to prepare

an affidavit of merit, in order to trigger the forty-five day period for a response.

[<u>Id.</u> at 558-59.]

In <u>Scaffidi</u>, we affirmed the dismissal of the complaint after concluding that the plaintiff could not resort to a SIL because he failed to specify that logs, which were requested among numerous other documents sought in a notice to produce, were needed to prepare the AOM.  <u>Ibid.</u>

Similarly, in <u>Guzman v. Jersey City Medical Center</u>, 356 <u>N.J. Super.</u> 37, 39-40 (App. Div. 2002), we held a plaintiff was not entitled to file a SIL where (1) the records or information did not exist because they were never created in the first place, and (2) they played no role in preparing an AOM.  There, the plaintiff claimed the defendant-hospital was negligent when its emergency room personnel failed to admit and treat him in a timely manner. <u>Id.</u> at 39.  After the ER staff allegedly ignored him, the plaintiff left and sought treatment elsewhere.  <u>Ibid.</u>  We held the plaintiff could not excuse his failure to file an AOM on the ground that the hospital failed to produce medical records when the plaintiff was never treated.  <u>Id.</u> at 42.  "[A] plaintiff cannot avoid the [AOM] requirement . . . by requesting documents he or she does not reasonably believe to exist and be necessary for 'preparation of the affidavit.'"  <u>Id.</u> at 40 (quoting <u>N.J.S.A.</u> 2A:53A-28).

However, when a defendant engages in a wholesale refusal to produce the medical records that it concededly possesses, "it should be presumed" that the withheld records have "a substantial bearing on preparation of the affidavit" as required by N.J.S.A. 2A:53A-28. Aster ex rel. Garofalo v. Shoreline Behavioral Health, 346 N.J. Super. 536, 543 (App. Div. 2002). In such a case, the defendant bears the burden to demonstrate that the withheld records are not pertinent to an AOM. Id. at 549. Furthermore, the SIL shall be deemed to have been filed as of the plaintiff's initial request for the never-furnished documents or information. Id. at 546. Otherwise, it is subject to the same sixty-day period set forth in N.J.S.A. 2A:53A-27. Id. at 550.

We recognized in Balthazar v. Atlantic City Medical Center, 358 N.J. Super. 13, 22 (App. Div.), certif. denied, 177 N.J. 221 (2003), that acts of negligence will often be unrecorded; however, a plaintiff must still show that the absence of such records impedes preparation of an AOM. In Balthazar, the plaintiff claimed that in the course of a hysterectomy, her physician negligently sutured and transected her left ureter. Id. at 16-17. After the surgeon could not find her dictated post-operative report in the chart, she dictated a second one, labeled "redictation." Id. at 20. None of the various versions of this report mentioned the suturing or transection and the physician testified she was unaware

the damage occurred. Ibid. However, evidence of the damage appeared in later studies, as well as in the report of another physician's reparative surgery. Ibid.

The plaintiff contended that a SIL was permitted because it was "impossible to provide an [AOM] when no authentic medical record exists[,]" alleging that the initial surgeon fraudulently altered her report when she prepared the redictation. Id. at 21. We disagreed and held that the absence of any reference to the suturing and transection in the initial surgeon's report did not justify a SIL, even if one assumed the initial surgeon tampered with her report. Id. at 22. We explained:

> [E]ven if we were to acknowledge fraud in what appears to us to have been an innocent redictation, we can find no causal relationship between that fraud and any inability on plaintiff's part to determine the nature of her injury and prepare an affidavit of merit. In this case, like many others, defendants claim that the damage that was inflicted was unknown to them and thus was unrepaired and unrecorded. This asserted lack of knowledge on defendants' part provides a factual foundation for [plaintiff's] malpractice claim. It does not provide grounds for avoidance of the requirements of the affidavit of merit.

> [Ibid.]

Applying these principles here, plaintiff has fallen far short of establishing grounds for filing a SIL. We reject plaintiff's assertion that "Scaffidi was wrongly decided, and

14                                                          A-1200-15T2

should not be relied upon by this [c]ourt[.]" As a threshold matter, plaintiff is procedurally barred from utilizing a SIL. Although a SIL may relate back to the date records were requested, plaintiff has presented no written request for "medical records or other records or information[,]" particularly one served by certified mail or personal service, forty-five days in advance of the SIL. We are not persuaded that the February 6, 2015 deposition notice served on Barg satisfies the required request contemplated under the statute. As a substantive matter, plaintiff did not file a sworn statement that specifically identified the records he needed from Barg, and there is no claim that Barg failed to turn over requested records. Again, we are unpersuaded that plaintiff's counsel's reference in her sworn statement to Barg's "fail[ure] to appear for deposition" sufficed to permit plaintiff to resort to a SIL.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1200-15T2