**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3894-23

SAVANNAH ABDELMALAK, a minor,
by her Guardians Ad Litem, EMAN
BISKALES ABDELMALAK, her mother,
and HANY ABDELMALAK, her father,
and EMAN BISKALES ABDELMALAK,
and HANY ABDELMALAK,
individually,

     Plaintiffs-Respondents,

v.

PRIME HEALTHCARE SERVICES-ST.
MARY'S PASSAIC, LLC, d/b/a SAINT
MARY'S GENERAL HOSPITAL,
MARJORIE ROSE, RN, CECIL
CANDAME, RN, VERSELLIS LARA,
RN, RACHEL SIMCHI, RN, BIBOR
KELEMAN, RN, BELEN SHERIDAN,
RN, MIRIAM MANDESIA, RN,
ESTATE OF ELLIOT SAMET, MD,
WILLIAM HENICK, MD, GUY
SALOMON, MD, RAMAPO VALLEY
ANESTHESIA ASSOCIATES, LLC,
FARES DIARBAKERLI, MD, SALMAN
OKOUR, MD, and NJ BEST OB/GYN,

     Defendants,

and

RICHARD MARTINEZ, MD,

      Defendant-Appellant.

_____

Argued January 29, 2025 – Decided February 19, 2025

Before Judges Rose, DeAlmeida and Puglisi.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-4103-20.

Matthew R. Parker argued the cause for appellant (Schenck, Price, Smith & King, LLP, attorneys; William J. Buckley and Matthew R. Parker, on the briefs).

James D. Martin argued the cause for respondents (Martin Kane Kuper, LLC, attorneys; James D. Martin and Jonathan D. Martin, on the brief).

PER CURIAM

      In this medical malpractice action, we granted defendant Richard Martinez, M.D., leave to appeal from a Law Division order, effectively permitting plaintiffs Eman Biskales Abdelmalak and Hany Abdelmalak, individually and as guardians ad litem of their daughter, Savannah Abdelmalak (collectively, plaintiffs), to file an amended complaint asserting claims against

Dr. Martinez alleging he negligently treated and cared for Savannah[1] – nearly one year after plaintiffs' pediatric anesthesiology claims against Dr. Martinez were dismissed with prejudice for failure to comply with the affidavit of merit (AOM) statute, N.J.S.A. 2A:53A-26 to -29. More particularly, the June 7, 2024 order denied Dr. Martinez's motion to reconsider an April 26, 2024 order,[2] vacating a June 9, 2023 order, which dismissed Savannah's claims for failure to provide a sufficient AOM and a November 3, 2023 order, which dismissed Eman's claims on summary judgment for failing to provide an expert report.

On appeal, Dr. Martinez argues the motion judge erroneously permitted plaintiffs "to revive old claims or assert new claims" following the dismissal with prejudice order, contrary to the AOM statute and its limited exceptions. Dr. Martinez also asserts his rights were prejudiced by the reinstatement order. Having reviewed Dr. Martinez's contentions in view of the procedural posture of the case and the purpose of the AOM statute, we affirm.

---

[1] Because plaintiffs share the same surname, we use their first names for clarity. We intend no disrespect in doing so.

[2] The April 26, 2024 order also permitted plaintiffs to assert claims in their amended complaint against Ramapo Valley Anesthesia Associates, LLC, by whom Dr. Martinez allegedly was employed at the time of the surgery. Of all defendants named in plaintiffs' present complaint, only Dr. Martinez is a party to this interlocutory appeal.

A-3894-23

I.

We summarize plaintiffs' allegations and the matter's half-decade procedural history from the limited motion record. On July 28, 2016, Eman underwent an emergency caesarean section (C-section) at St. Mary's Hospital (SMH) in Passaic. Born prematurely, Savannah weighed two pounds and required immediate resuscitation via intubation. Savannah later was diagnosed with a brain injury caused by reduced blood flow and oxygen levels around the time of birth.

Sometime later, plaintiffs' initial attorneys obtained from SMH a partial set of medical records. In April 2019, plaintiffs retained present counsel, who made multiple attempts to obtain a complete set of records from SMH, including assistance from the Department of Health and Human Services (DHHS). On April 13, 2020, SMH advised plaintiffs' counsel the records could not be located.

Around the same time,[3] plaintiffs sued SMH and the medical staff for negligence in their treatment and care of Eman and Savannah. Based on the records furnished by the hospital at that time, plaintiffs "believed that the

_____

[3] In his merits brief, without citation to the record, Dr. Martinez states the complaint was filed on June 4, 2020. The complaint provided in plaintiffs' appellate appendix is dated March 25, 2020, but is not stamped filed.

medical failures in this case arose from the delay in delivering Savannah and that her injury occurred before or during delivery." Dr. Martinez was not named as a defendant in plaintiffs' initial complaint.[4]

In response to plaintiffs' interrogatories, SMH served the same incomplete set of medical records. Ultimately, following two case management orders directing SMH produce full and complete and certified records of Eman's and Savannah's treatment, in December 2021, plaintiffs received from SMH 300 additional documents, including "nursing notes"; "fetal monitoring strips"; "the anesthesia record"; and "Savannah's chart containing neonatal records."

By leave granted, in February 2022, plaintiffs filed a second amended complaint.[5] Plaintiffs named as defendants the three anesthesiologists apparently referenced in the anesthesia records, Willam Henick, M.D., Guy Salomon, M.D., and Dr. Martinez. Pertinent to this appeal, plaintiffs asserted all defendant physicians, including Dr. Martinez

---

[4] For reasons that are unclear from the record, plaintiffs filed an amended complaint in late 2020. Dr. Martinez was not named as a defendant in the amended complaint.

[5] The caption of the second amended complaint provided in Dr. Martinez's appellate appendix indicates his first name was unknown, but his full name is reflected throughout the complaint.

A-3894-23

negligently failed to exercise the degree of care required by accepted standards of good medical practice in that they failed to properly diagnose, medicate and treat . . . Eman . . . , and thereby . . . Savannah . . . , in accordance with the accepted standards of good and reasonable medical practice.

[(Emphasis added).]

Plaintiffs also "produced"[6] an AOM from a board-certified anesthesiologist with a specialty in obstetric anesthesiology, asserting the care and treatment provided by Drs. Henick, Salomon, and Martinez "fell outside acceptable professional or occupational standards or treatment practices."

Thereafter, in April 2022, SMH provided another 350 pages of documents. According to plaintiffs' responding brief on appeal, "[t]he 'official set' consists of over 1,000 pages and, to date," SMH has not "certified them as true, accurate, or complete."

In his May 2022 answer, Dr. Martinez averred he was board certified both in anesthesiology and pediatric anesthesiology. Specifically, at the time of the surgery, he "was practicing the specialty of anesthesiology when he rendered care to Eman" and "the subspeciality of pediatric anesthesiology when he rendered care to Savannah." Discovery ensued.

---

[6] Dated January 19, 2022, it is unclear from the record whether the AOM was filed with the complaint.

The following year, in his March 7, 2023 answers to interrogatories, Dr. Martinez described his medical relationship with plaintiffs and treatment rendered:

> I served as the anesthesiologist for the C-[s]ection performed on July 28, 2016. Following the delivery[,] the baby was intubated by [neonatologist, Elliot] Samet [M.D.]. I reintubated the baby at the request of Dr. Samet.
>
> . . . .
>
> I was one of the anesthesiologists on duty in [SMH] on July 28, 2016. On that date I received a communication from Dr. Guy Salomon requesting my assistance with a stat C-[s]ection. I immediately proceeded to the Labor and Delivery Suite. Dr. Salomon and I arrived in [the operating room] just as the patient was being pushed into the room. The patient was placed under general anesthesia. Following the delivery the baby was intubated by Dr. Samet. I reintubated the baby at the request of Dr. Samet.

Dr. Martinez was deposed the next day. The following exchange ensued, in relevant part:

> [PLAINTIFFS' COUNSEL:] [M]y understanding from your [a]nswers to [i]nterrogatories you were called on after the delivery by the pediatrician and neonatologist who intubate[d] this child; is that correct?
>
> [DR. MARTINEZ:] Correct.
>
> [PLAINTIFFS' COUNSEL:] Is that something that's typically within your services in this circumstance or is

that something out of the ordinary for you to be asked to intubate the baby?

[DR. MARTINEZ:] Do I . . . have the skill set to do it or is it something routinely that happens or two separate questions? I'm sorry.

[PLAINTIFFS' COUNSEL:] Did you have the skill set to do it?

[DR. MARTINEZ:] Yes.

[PLAINTIFFS' COUNSEL:] Okay. But would you typically perform that service or is that something out of the ordinary?

[DR. MARTINEZ:] It's not routine.

[PLAINTIFFS' COUNSEL:] [] Do you know why in this case you were asked to do that?

[DR. MARTINEZ:] Based on my note, it just says that they were having trouble, but why they were having trouble, I don't know. I didn't write that down.
[PLAINTIFFS' COUNSEL:] Is there any way you can tell from the record or were able to tell from the record how many attempts individuals before you, whether it be the nursing staff or the pediatrician, made to intubate before you were asked to do that?

After an objection as to form, Dr. Martinez responded:

In my note it says multiple intubations by the neonatologist. So multiple is more than one but I can't tell you how many. And again, I was attending to my patient up top, the mother. And so you know, the operating room is a very hectic location. I wasn't sitting there counting.

8                                    A-3894-23

The following exchange later continued:

[PLAINTIFFS' COUNSEL:] After you were successful with the intubation did you stay with the child or did you return to your patient?

[DR. MARTINEZ:] I had to immediately return to my patient.

[PLAINTIFFS' COUNSEL:] Okay. And did you have any further contact with the child after that?

[DR. MARTINEZ:] He asked me – according to my note here, he asked me to re-intubate again at the request of the neonatologist. So, I showed him the same view and we don't change anything there.

[PLAINTIFFS' COUNSEL:] I'm not sure I understand that. So, you were asked to do it a second time?

[DR. MARTINEZ:] Correct.

. . . .

[PLAINTIFFS' COUNSEL:] Is there an indication as to why you were asked to do it a second time?

[DR. MARTINEZ:] I can only – based on the notes the baby's not getting better so it appears that – but again, I'd just be speculating. The baby's not getting better, it's clear to me. And . . . the neonatologist is wondering if the tube's in the correct location.

[PLAINTIFFS' COUNSEL:] Okay. So, did you have to do the intubation a second time or was the tube that you originally put in satisfactory?

[DR. MARTINEZ:] The tubing was satisfactory but the second time I showed him, I said, please look. So, I just kind of opened the mouth, inserted the blade so he can see with his own eyes. It's a small airway. If I stand over it, he is not able to see. I said, please look. He sees the same view that I see. So, now we both are on the understanding that it's in the right place.

According to the nurse's report, Dr. Samet intubated Savannah between 9:09 a.m. and 9:17 a.m., and Dr. Martinez reintubated her at 9:36 a.m. Savannah began showing improvement by 10:00 a.m. Sometime after 10:25 a.m., Savannah was transferred to St. Joseph's Hospital.

Plaintiffs failed to provide an AOM from a pediatric anesthesiologist within the statutory time frame. See N.J.S.A. 2A:53A-27.[7] The motion judge granted Dr. Martinez's unopposed dismissal motion. In their merits brief on appeal, plaintiffs explain the SMH "nursing notes did not suggest anything other than a successful intubation, and Dr. Samet's notes d[id] not even mention Dr. Martinez"; and "Dr. Martinez's notes and later explanation suggest[ed] nothing

---

[7] Although not referenced by the parties, we glean from the motion judge's decision on reconsideration, a Ferreira conference was conducted prior to the expiration of the statutory period. See Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 154-55 (2003) (mandating a conference "within ninety days of the service of an answer in all malpractice actions," during which "the court will address all discovery issues, including whether an [AOM] has been served on [the] defendant" and "whether [the defendant] has any objections to the adequacy of the affidavit").

untoward on his part." Accordingly, plaintiffs did not oppose Dr. Martinez's motion to dismiss "claims that did not actually exist" and were not then supported "by any reasonable medical evidence."

The June 9, 2023 order dismissed with prejudice

> any and all claims against [Dr.] Martinez . . . for the treatment and care of the infant plaintiff Savanah . . . within the specialty of pediatric anesthesiology alleged in [p]laintiffs' [second a]mended [c]omplaint and any and all crossclaims derived therefrom only . . . against [Dr.] Martinez . . . , for failure to provide a sufficient [AOM] pursuant to [the AOM statute.]
>
> [(Emphasis added).]

Plaintiffs' counsel neither objected to the form of the order prepared by defense counsel, nor moved to limit the terms of the dismissal to preserve Savannah's direct claims against Dr. Martinez. No statement of reasons accompanied the order. See R. 1:7-4(a).

At some point after the claims against Dr. Martinez were dismissed, plaintiffs consulted with a neonatologist and a neuroradiologist, who opined Dr. Samet's treatment of Savannah "may have contributed to [her] injuries." In his September 20, 2023 certification in support of plaintiffs' motion to file a third amended complaint naming Dr. Samet's estate,[8] plaintiffs' counsel averred:

---

[8] Dr. Samet's date of death is unclear from the record provided on appeal.

because Savannah is a minor, the statute of limitations was not at issue; fact discovery was ongoing; expert reports had not been exchanged; because Dr. Samet is deceased, claims against him would be limited to the existing record; and a trial date had not yet been scheduled.

The motion judge granted plaintiffs' application. For reasons that are unclear from the record, plaintiffs' October 24, 2023 third amended complaint retained their allegations against Dr. Martinez, which had been dismissed more than four months prior.

On a date not disclosed in the record, plaintiffs' neonatologist suggested the medical records "were deficient or incomplete and that a review of Dr. Martinez's involvement in the 'failed' intubations should be examined." On April 5, 2024, plaintiffs obtained an AOM from Adam Adler, M.D., a board-certified anesthesiologist with a specialty in pediatric anesthesiology, against Dr. Martinez. Around the same time, plaintiffs moved to vacate the June 9, 2023 dismissal order pursuant to Rule 4:42-2, and amend their complaint "to add a new claim against Dr. Martinez" under Rule 4:9-1.[9]

---

[9] Plaintiffs' notice of motion was not provided on appeal. At our request, Dr. Martinez's counsel provided the transcript of the motion hearing.

During oral argument on April 26, 2024, plaintiffs' counsel clarified his clients only sought to vacate the dismissal order for failure to provide an AOM from a pediatric anesthesiologist. Plaintiffs abandoned their claims against the three anesthesiologists, including Dr. Martinez, for their treatment of Eman. In response to the judge's inquiry, plaintiffs' counsel acknowledged the claims asserted in the dismissed complaint on Savannah's behalf were akin to a derivative claim, i.e., Savannah was injured "through the care or lack of care" rendered to Eman by Dr. Martinez.

Plaintiffs' counsel argued extraordinary circumstances warranted vacatur of the dismissal order. Specifically, it was not until plaintiffs' neonatologist, apparently retained in connection with their claims against Dr. Samet, opined there was "something missing . . . that a trained pediatric anesthesiologist would have immediately, not subsequently, . . . known that he didn't have that tube properly placed in the trachea." The neonatologist told plaintiffs' counsel, "there [we]re tell-tale signs in the gasses and whatever's being produced simultaneously with this process . . . that any first-level anesthesiologist would have known immediately that that tube was misplaced." The neonatologist suggested plaintiffs retain "another expert and have him look at it." Plaintiffs

13

then obtained an AOM from Dr. Adler. Plaintiffs' counsel thus argued Dr. Martinez "wasn't forthcoming" when deposed.

Immediately following argument, the judge issued an oral decision granting plaintiffs' motion. Citing his familiarity with the case and "great difficulty" plaintiffs experienced in obtaining a complete set of medical records over "extended periods of time," the judge found plaintiffs clearly "acted with due diligence." The judge further found the AOM statute was not

> set up for a situation where a party acts with due diligence, the records are less than forthcoming, the doctor's deposition – I'm not suggesting for a moment that Dr. Martinez was purposely evasive – but certainly would not have given somebody an indication that there was a basis to seek to make that person a defendant at that time.

The judge was convinced fundamental fairness and the absence of any prejudice to Dr. Martinez warranted relief from the dismissal order.

On April 30, 2024, plaintiffs filed their fourth amended complaint, adding direct claims against the defendant physicians, including Dr. Martinez, for Savannah's injuries. The parties do not dispute that plaintiffs provided Dr. Adler's AOM to Dr. Martinez.

Shortly thereafter, Dr. Martinez moved for reconsideration of the April 26, 2024 order. During oral argument on the return date of the motion, Dr.

Martinez's attorney asserted, following Dr. Martinez's deposition, plaintiffs were well aware of his role in caring for Savannah. Thus, defense counsel argued Dr. Martinez did not "deliberately obfuscate his testimony." Defense counsel also asserted no authority in this state supported plaintiffs' motion to reinstate claims that had been dismissed with prejudice for failure to file an appropriate AOM. Citing our decision in Davies v. Imbesi, 328 N.J. Super. 372 (App. Div. 2000), defense counsel argued "the legislature did not intend a delay in obtaining medical records to constitute exceptional circumstances" and, by extension, the legislature "would [not] intend that medical records [a] plaintiff might misinterpret or not fully understand would be the basis for exceptional circumstances."

In a written rider to the June 7, 2024 order, the motion judge addressed the arguments raised on reconsideration, including his greater understanding of plaintiffs' reliance on a theory "akin to the discovery rule," that is, "an [AOM] is not required unless and until a party knows or should have known of the potential malpractice by the medical professional." The judge recognized the absence of any authority supporting the failure to file a timely AOM where the medical records "fail to provide the basis for determination of the applicability and necessity for the AOM."

The motion judge compared the circumstances presented here with those in other cases where our courts have addressed a plaintiff's failure to file a timely AOM. As one notable example, the judge distinguished Davies, 328 N.J. Super. at 377, where unlike plaintiffs in the present matter, the plaintiffs in that case delayed obtaining medical records.

Citing the "unique circumstances of this litigation and the efforts of plaintiff[s'] counsel," the judge reiterated his decision that fairness dictated permitting plaintiffs to reinstate their claims on Savannah's behalf. The judge underscored the purpose of the AOM statute was not to bar meritorious litigation under these circumstances, where Dr. Martinez's alleged actions "we[re] far from clear" from the SMH records and Dr. Martinez's deposition testimony. The judge thus concluded "the records and testimony of Dr. Martinez did not provide an adequate basis to permit a reasonably diligent attorney to recognize the necessity for an [AOM]." Nor was the judge convinced Dr. Martinez suffered prejudice by denial of his reconsideration motion.

## II.

Generally, absent an abuse of discretion, appellate courts will not disturb a trial court's order on a motion for reconsideration. See Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021). An abuse of discretion arises when a

16

decision was "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Servs., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Unlike reconsideration motions to alter or amend final judgments and final orders, which are governed by Rule 4:49-2, a motion for reconsideration of an interlocutory order – as was the dismissal order here – is governed by the "far more liberal approach" set forth in Rule 4:42-2. Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021). "Rule 4:42-2 declares that interlocutory orders 'shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice.'" Ibid. (quoting R. 4:42-2).

However, we review de novo "all decisions on a motion to dismiss." Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div. 2016) (recognizing our de novo standard of review on a trial court's dismissal under the AOM statute). "We likewise conduct a plenary review of the trial court's determination of a dismissal motion under Rule 4:6-2(e)." Pfannenstein v. Surrey, 475 N.J. Super. 83, 95 (App. Div.), certif. denied, 254 N.J. 517 (2023) (citing Dimitrakopoulos

v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)).

Pertinent to this appeal, a plaintiff in a medical negligence action must,

> within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices.
>
> [N.J.S.A. 2A:53A-27.]

An additional time period of sixty days may be granted upon a showing of "good cause." Ibid. The AOM is due at the expiration of this time frame, "regardless of whether the pleadings are subsequently amended to name other defendants or assert additional claims." Yagnik v. Premium Outlet Partners, L.P., 467 N.J. Super. 91, 97 (App. Div. 2021).

Our Supreme Court recently reiterated the "dual purposes of the AOM statute": "to weed out frivolous lawsuits early in the litigation while, at the same time, ensuring that plaintiffs with meritorious claims will have their day in court." Wiggins v. Hackensack Meridian Health, ___ N.J. ___, ___ (2025) (slip op. at 14) (quoting Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 150 (2003)); see also Meehan v. Antonellis, 226 N.J. 216, 229 (2016). The failure

18

to provide an AOM is considered "a failure to state a cause of action" under N.J.S.A. 2A:53A-29 and warrants a dismissal with prejudice. A.T. v. Cohen, 231 N.J. 337, 346 (2017) (quoting N.J.S.A. 2A:53A-29).

In medical negligence actions, N.J.S.A. 2A:53A-41 requires the AOM affiant to "be equivalently-qualified to the defendant" physician. Buck v. Henry, 207 N.J. 377, 389 (2011) (quoting Ryan v. Renny, 203 N.J. 37, 52 (2010)). Stated another way, when a defendant is a board-certified specialist, the plaintiffs must provide an AOM from a physician board-certified in the same specialty. See N.J.S.A. 2A:53A-41(a). To ensure a plaintiff files a proper AOM, "a defendant physician must indicate in his [or her] answer . . . the specialty, if any, in which he [or she] was involved when rendering treatment." Henry, 207 N.J. at 383.

Our Supreme Court has carved out two limited exceptions to "temper the draconian results of an inflexible application of the [AOM] statute." Ferreira, 178 N.J. at 151. Initially, "[a] complaint will not be dismissed if the plaintiff can show that he [or she] has substantially complied with the statute." Ibid. (citing Palanque v. Lambert-Woolley, 168 N.J. 398, 405-06 (2001)). Substantial compliance is not at issue here.

A-3894-23

Secondly, "[w]here extraordinary circumstances are present, a late affidavit will result in dismissal without prejudice." Paragon Contractors, Inc. v. Peachtree Condo. Ass'n, 202 N.J. 415, 422-23 (2010). To determine whether extraordinary circumstances are present, the court must engage in "a fact-sensitive [case-by-case] analysis." Tischler v. Watts, 177 N.J. 243, 246 (2003) (alteration in original) (quoting Hartsfield v. Fantini, 149 N.J. 611, 618 (1997)). "To show extraordinary circumstances, it is unnecessary to establish that an opponent acted in bad faith or deliberately misled a plaintiff." Yagnik, 467 N.J. Super. at 116. Extraordinary circumstances exist where there is a "perfect storm of injustice." A.T., 231 N.J. at 350.

Against these legal principles, we disagree with Dr. Martinez's argument that the motion judge "create[d] a novel exception" to the AOM statute's requirements. Rather, we are convinced, as was the judge, extraordinary circumstances warranted vacatur of the dismissal order to prevent a manifest injustice in this case. The judge's finding is supported by the protracted procedural history, which included multiple and diligent attempts by plaintiffs' counsel to obtain a complete set of SMH medical records, and required intervention by DHHS and the court. Cf. Davies, 238 N.J. Super. at 377. Further, Savannah's direct claim against Dr. Martinez was not readily apparent

20

from counsel's review of the medical records and Dr. Martinez's sworn statements which, taken together, did not evince wrongdoing. Plaintiffs were not aware of Savannah's direct claims until experts retained in connection with their claims against Dr. Samet recommended a pediatric anesthesiologist should review the records.

Nor are we persuaded by Dr. Martinez's argument that, because the third amended complaint named Dr. Samet – the neonatologist who, by definition, directly treated Savannah – and reiterated the same derivative treatment language as the second amended complaint, plaintiffs effectively asserted direct claims against Dr. Martinez in their second amended complaint. Plaintiffs alleged Savannah was injured by defendants' "fail[ure] to properly diagnose, medicate and treat . . . Eman . . . , and thereby Savannah . . . in accordance with the accepted standards of good and reasonable medical practice." When "liberally construed in the interest of justice," see R. 4:5-7, the second amended complaint did not allege direct claims. We conclude, as the judge correctly noted during colloquy with plaintiffs' counsel, Savannah's claims were derivative of Dr. Martinez's failure to properly render care to Eman.

We nonetheless are troubled by the breadth of the June 9, 2023 order, which dismissed "any and all claims against" Dr. Martinez for his care and

21

treatment of Savannah "within the specialty of pediatric anesthesiology alleged in [p]laintiffs' [second a]mended complaint."  That language incorrectly encompassed Savannah's direct claims against Dr. Martinez, which were not pled in the second amended complaint.

We recognize plaintiffs did not move to amend the dismissal order to protect Savannah's direct claims, which are tolled until she reaches age thirteen. See N.J.S.A. 2A:14-2.2 (providing "an action by or on behalf of a minor that has accrued for medical malpractice for injuries sustained at birth shall be commenced prior to the minor's 13th birthday").[10]  However, it is unclear from the order whether the court and counsel considered the broad terms of the dismissal language.  For purposes of appellate review, a trial court should issue some explanation when dismissing allegations on behalf of a child whose claims have not yet accrued.  See Rule 1:7-4(a) (requiring the court "find the facts and state its conclusions of law thereon . . . on every motion decided by a written order that is appealable as of right").  There is no exception to the rule "where

---

[10]  Nor do plaintiffs contend the order was improvidently entered as drafted. They maintain, instead, their belated claims against Dr. Martinez are protected under the discovery rule.  See Lopez v. Swyer, 62 N.J. 267, 272 (1973) (holding "a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim").  The motion judge declined to analyze plaintiffs' claim pursuant to Lopez, and so do we.

the motion is unopposed." Allstate Ins. Co. v. Fisher, 408 N.J. Super. 289, 299-300 (App. Div. 2009).

In any event, we are satisfied dismissal of Savannah's direct claims with prejudice for failure to comply with the AOM statute, when those claims were not asserted in the second amended complaint and the child has not yet attained the age of thirteen, would have been a manifest injustice if the dismissal order had not been vacated. Our conclusion is consonant with the judge's reasoning.

Lastly, we disagree with Dr. Martinez's renewed argument that he is unduly prejudiced by the late amendment of plaintiffs' claims. Dr. Martinez fails to articulate, with any specificity, how he is harmed by reentering the case. He has not, for example, asserted "any loss of evidence or undue additional defense costs that could result from allowing [the] plaintiffs' case to proceed." See Mayfield v. Cmty. Med. Assocs., P.A., 335 N.J. Super. 198, 207 (App. Div. 2000). Nor does Dr. Martinez dispute plaintiffs' assertion that he "has been privy to, and participated in, all discovery that has occurred in this case."

We are satisfied the motion judge's decision is consistent with the AOM statute's dual purposes. Wiggins, ___ N.J. at ___ (slip op at. 14). We recognize, however, plaintiffs are not relieved of their burden of demonstrating Dr. Martinez's medical negligence at trial. See id. at ___ (slip op. at 27).

23                                                                              A-3894-23

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3894-23